## ADDISON COUNTY.

### JANUARY TERM, 1835.

PRESENT, HON. CHARLES K. WILLIAMS, *Chief Justice.*
   "    "   .STEPHEN ROYCE,
   "    "   JACOB COLLAMER, } *Assistant Justices.*
   "    "   JOHN MATTOCKS,

—————

MIDDLEBURY, NEW HAVEN and BRISTOL *vs.* AZARIAH ROOD.

ADDISON,
*January,*
1835.

Where a note was given to the selectmen of three towns, and prosecuted to final judgment in the name of said towns, under the directions of a special agent appointed by one of said towns, and the money collected and paid to said selectmen by the sheriff—*Held,* That said selectmen were not authorized to receive said money and to discharge the sheriff.

The authority given by the statute to the selectmen over the prudential affairs of the town, does not authorize them to receive the moneys of the town and execute discharges therefor.

This was an action against defendant, as sheriff, for not paying over money collected on an execution. Trial by the court.

The facts were, that a note of hand was given by one Case to the selectmen of the towns of Middlebury, New Haven and Bristol, which was prosecuted to final judgment in the name of the plaintiffs, by the direction of a special agent of the town of Bristol. No special agent was appointed by either of the other towns. An execution issued on the final judgment recovered at the last term of the supreme court in this county, for $137 67 damages, besides the cost, and was put into the hands of the defendant, within the life, who received the money upon it. It also appeared, that after the commencement of this suit the defendant paid to the selectmen of Middlebury, two of the selectmen of Bristol, and two of the selectmen of New Haven, the full amount of money received on the execution, and on that occasion the said selectmen executed to the defendant the following discharge:

"Received, May 31, 1834, of Azariah Rood, sheriff, $166 79, in full satisfaction of an execution in favor of the towns of Mid-

ADDISON,  dlebury, New Haven and Bristol, against Nathan Case, issued on
January,  a judgment of the supreme court, January term, 1834; and we
1835.
Middlebury *et al* hereby discharge the suit commenced against said Rood on account
*vs.*    of said execution, and direct the said suit to be discontinued."
Rood.

This discharge was signed by the three selectmen of Middle-
bury, two of the selectmen of Bristol, and two of the selectmen
of New Haven.

This discharge was objected to by the plaintiffs, but the court
decided that it was good and available in law to the defendant, and
thereupon rendered judgment for the defendant, to which plaintiff
excepted, and the exceptions were allowed and certified.

*Linsley* and *Chipman* and *Bradley for the plaintiffs.*—1. The
discharge of the selectmen is wholly inoperative. No town offi-
cer can discharge any debt, except by receiving the money. If
the debt is to be discharged without payment, it must be by a vote
of the town. The payment of the money then, being essential to
the validity of the discharge, it is equally essential that the pay-
ment be made to some one authorized *by law* to receive the money.
The treasurer is the only officer authorized by law to receive and
pay out the monies of the town. His duties and responsibilities
are clearly fixed by law; and peculiar and appropriate remedies and
ample security are provided by statute for the town. The duties
of the treasurer of a town being thus clearly defined by the statute,
no other officer can exercise the power conferred upon him, unless
clearly and expressly authorized by the statute. The court will
not give this power, thus given to the treasurer, to another officer,
by implication. It is obvious, that to have the monies of the town
paid to several and distinct and separate officers, keeping no com-
mon accounts, would produce irretrievable confusion, and it is im-
possible to believe that it was ever designed to produce such a re-
sult. Besides, the legislature, by the provisions of the statute
requiring the treasurer to give bonds, &c. have shown what pre-
cautions they supposed necessary for the security of the town
against those authorized to receive the public money ; and having
provided no such security for the town from the selectmen, the in-
ference is irresistible, that they did not contemplate that they would
be entrusted with the common funds. The treasurer is appointed
for the sole purpose of doing what, in this case, the selectmen
have attempted to do for him ; and in doing it, they have clearly
departed from their sphere, and invaded the rights of another de-
partment ; and in doing this, they offer none of the safeguards to

the town which the law requires from the officer charged with this duty.

ADDISON,
January,
1835.

Middlebury et al
vs.
Rood.

The treasurer then, it is insisted, is the only officer authorized by law to receive and disburse money for towns.

2. But whether this be so, or not, it is clear that the selectmen are not clothed with this power.

(1.) The duties of the selectmen are, " to superintend the prudential affairs of the town." This general definition is obviously loose, but if nothing else was to be found in the statute, all the power that could with any show of reason be given them by this section of the statute, would be to permit them to do those acts which were obviously prudent and necessary for the town to have performed, and which could not come within the appropriate duties of any other officer.—Comp. Stat. 410, sec. 3.

(2.) The legislature have not left it doubtful how " prudential" should be construed. They have proceeded to point out minutely their duties. They are to take bonds of the constable, warn meetings, make up taxes, lay out roads, superintend roads, bridges, &c. But they are not under the pretence of superintending the prudential affairs of the town, to perform the duties of the constable or town clerk, or remove the deposits from the treasury, or intercept the money in its way to the treasury.

By the constitution of the state, the legislature are undoubtedly interested with the superintendence of the prudential affairs of the state, and yet they are not authorized to receive a dollar. They can borrow and appropriate money, and levy taxes—their powers far exceeding those of selectmen—but they are not authorized to receive money.

Wherever the powers of selectmen have been judiciarily considered, courts have strongly intimated that their authority was limited to a narrow sphere. They cannot discharge a witness.— *Angel* vs. *Pownal*, 3 Vt. Rep. 61.

(3.) Selectmen are special agents, and their powers are limited by statute, which points out their duties. This subject was fully discussed and ably illustrated by Judge Hosmer, in *Griswold* vs. *Stonington*, and it was decided that they could not submit a suit. 5 Con. Rep. 371.

(4.) Their acknowledgment that a person is a pauper, is no evidence.—1 Day, 183.

(5.) They cannot by accord take away the rights of the town. 2 Day, 323.

(6.) They cannot, without a vote of the town, commence a suit.

ADDISON,
January
1835.

Middlebury *et al*
*vs.*
Rood.

3. The town of Bristol has appointed a special agent for the sole purpose of managing this business, and his having the note may be considered as evidence that he acted as agent with the consent of all the towns.

The selectmen of Bristol, who are the agents of the town for special purposes, cannot supercede the special agent appointed for this purpose, and take the business out of his hands.

4. All the selectmen of the towns of New Haven and Bristol have not joined in the discharge. The selectmen or a majority are not authorized to act. They must all concur to give validity to their proceedings.

*Starr and Bushnell for defendant.*—The discharge executed by the selectmen of the three towns to the defendant, on the receipt by them of the whole sum of the execution in favor of the towns against N. Case, was a valid discharge to the defendant.

1. The selectmen are appointed " to superintend the prudential affairs of the town."—See Rev. Stat. p. 409. They are the general agents of the town. They are, *ex officio*, overseers of the poor, unless other overseers are appointed. They are also trustees of schools, *ex officio*, in conjunction with others appointed by the town ; and as such trustees, they are expressly empowered " to commence, prosecute and defend any suit or suits, action or actions, for or on account of any money or other estate, belonging to, or in any wise appertaining to such schools." See Rev. Stat. pp. 589, 432 and 433. Various special duties are imposed on them by particular special statutes. They are so entirely the agents of the town, that, for all their official acts, for which a right of action accrues to any one, the town is subjected to the action ; and in all cases where an action is given by law to the selectmen, " it must be brought in the name of the town." See Rev. Stat. p. 159. As they are to take charge of the property of the town and secure the same from loss, they must have the right to commence suits and also to stop or discharge them on payment of the debt or sum due.—1 Chip. Rep. 378. —— vs. *Webber,* and note, 456.

2. Nor does it make any difference that the town of Bristol had appointed an agent " to look up this money." He had no authority to act for Middlebury or New Haven, and he could take no step without their concurrence, no more than a selectman can act for the whole board of selectmen and bind the town by drawing orders, &c.

3. The tender of sixty dollars was more than the whole taxed bill of cost. The bill of costs was only $29 47, and the lien of

the attorney attaches only to the bill of costs.—2 Aik. Rep. 162,
*Hart* vs. *Chipman and Bates.*   5 Bos. and Pul. 100, *Swain* vs.
*Senate.*   6 T. R. 361, *Reed* vs. *Dupper.*

ADDISON,
*January,*
1835.
—————
Middlebury *et al*
*vs.*
Rood.

The opinion of the court was delivered by

MATTOCKS, J.—The question in this case is, whether the se-
lectmen had competent authority to receive the money and dis-
charge the debt ; and this involves in the first place the question,
whether they have such a general power or authority by virtue of
their office, and secondly whether they had it under the circum-
stances of this particular case.

It is not known that there has been any particular decision that
reaches the first branch of the question.   In *Angell* vs. *Pownal*,
3 Vt. Rep. 61, it was decided that the selectmen could not, with-
out a vote of the town, discharge the interest of a witness, but that
was a discharge without payment.   In Connecticut, where the
statute, as it relates to the duties of selectmen, is very like ours, it
has been decided that they cannot, without a vote of the town,
commence or refer a suit, nor accept of an award and satisfaction.
But whether they can receive the money and cancel the debts
due to the town, has hitherto been undecided.   That it is the ap-
propriate duty of the town treasurer to keep and receive the mo-
nies of the town, and that payment to him is payment to the town,
there is no doubt; and the statute requiring him who is to keep,
and the collector who is to gather the money, to give bonds, and it
being required of no other town officer, affords a strong argument
that these two and no others were intended to be made the fiscal
officers of the town.   For this there would seem to be good rea-
sons.   It is but the common precaution in relation to most corpo-
rations, public or private.   The selectmen may be discreet fathers
of the town, yet be or become poor.   They are not, like a presi-
dent of a bank, appointed for their wealth ; and if one set should
happen to be defaulters, the next might collect it of them, and not
pay to the treasurer, and so indefinitely, before the money would
arrive at its final destination ; and although it would be rare that
they would squander town money, yet where the funds are consid-
erable, if they could control them, it might happen ; and unless the
law by fair implication at least gave them the right contended for,
it would be more safe not to decide that they have it.

The statute relating to town meetings directs that three or more
persons, not exceeding five, be appointed as selectmen, " to super-
intend the prudential affairs of the town," and who are to be over-

ADDISON,
January
1835.
Middlebury et al
vs.
Rood.

seers of the poor, if none others are appointed; and in various statutes particular acts and duties are required of them as select-men and overseers of the poor; but among these, it is believed, that of prosecuting or defending suits, or of collecting or receiving money, is not to be found. Suits are directed to be prosecuted or defended by agents appointed by vote of the town, and all suits where by law an action had been given to the selectmen, among others, are by the act of 1817 directed to be brought in the name of the town, depriving them from being even nominal parties. The act for the support of schools indeed appoints the selectmen, and a trustee to be appointed by the town, trustees of schools, with power to lease lands and lend the money; but this is a distinct board from the selectmen merely, with particular powers conferred; and this being the only instance in which the selectmen, even with another, are entrusted with the abiding care of funds, and in this case there being a standing trustee joined with them, is rather an argument against them for the power of the selectmen, as such, to receive money. But it is insisted, that this power is conferred by the words, " to superintend the prudential affairs of the town." This general purpose of their appointment is contained in the very clause directing them to be appointed, and afterwards particular acts and duties are enjoined. Perhaps these specified duties may be regarded as what is meant by " prudential affairs." If not, the broadest construction would seem to comprehend no more than all those undefined acts and doings that are necessary and convenient to have done in the management of the affairs of the town, which it is not made the duty of other officers to do—every thing that is no one's business in particular to do—that is, to do the chores of the town. But it is the proper business of the treasurer to receive and keep the cash of the town; and therefore it is not comprehended by this general expression.

We think, therefore, that the power in question is not given to the selectmen, either expressly or by necessary implication, and therefore they have it not.

There is nothing in this case, that will distinguish it, favorable to the defendant. It does not appear, that the selectmen of any of these towns took the note which was sued, or ever had any actual agency in the matter; but the suit was prosecuted by a special agent appointed by the town of Bristol, and after final judgment, and the money had been collected upon the execution of the defendant, the sheriff, in lieu of paying the money over to the attorney or agent, saw fit to pay it to the selectmen of these towns.

There is no doubt but that there may be cases in which, when the selectmen having been entrusted by the town to take or hold securities, the receiving the money upon them and giving them up to be cancelled, would be an extinguishment of the debt. But here was no implied agency. Their interference was entirely gratuitous, and intended to be official, and it not being within the scope of their general authority, the discharge they gave was of no effect.

Addison,<br>January,<br>1835.

Middlebury et al<br>vs.<br>Rood.

Judgment of county court is reversed.