H. P. CORNELL COMPANY *vs.* HERBERT W. BARBER, Town Treasurer of the Town of Warwick.

JULY 7, 1910.

PRESENT:   Dubois, C. J., Blodgett, Johnson, Parkhurst, and Sweetland, JJ.

(1) *Financial Town Meeting.    Powers.    Auditing Committee.*

The taxpayers are the only electors who, under the constitution, can vote "upon any proposition to impose a tax or for the expenditure of money in any town or city" but they do not constitute the town.   The inhabitants of

the town constitute the town as a body corporate, and the powers of election are exercised by all the electors in the town meeting.

Gen. Laws, 1909, cap. 46, § 11, confers no power upon a financial town meeting to elect an agent called "an auditing committee," without whose approval no money may be expended by the town treasurer, though audited by the town auditor and allowed and ordered paid by the town council, unless such claim has been reduced to a judgment. *Foster* v. *Angell*, 19 R. I. 285, overruled in part.

(2)  *Appropriations.	Financial Town Meeting.*

While moneys appropriated by a financial town meeting must be applied to the purposes for which they were appropriated, the taxpayers in such financial meeting can not, after making the appropriation, order or forbid the disbursement of such moneys within and for the purposes for which they were appropriated.  Such money is not the money of the tax-paying voters, but the money of the town.

(3)  *Town Council Governing Body.	Power to Allow Claims.*

Under Gen. Laws, 1909, cap. 50, § 4, and cap. 46, §§ 12 and 13, the town council is the governing body of a town and has full power to pass upon, adjust, and order paid claims against the town, and it is the duty of the town treasurer to pay claims so allowed.

(4)  *Special Agents of Town.*

Gen. Laws, 1909, cap. 46, § 11, authorizing towns to appoint "such special agents for the transaction of any town business, *not by law required to be performed by any officer known to the law,* as they deem expedient," could not confer authority upon a financial town meeting to appoint an "auditing committee" for the purpose of auditing accounts, when a town had, under the provisions of Pub. Laws, cap. 402, of April 30, 1909, elected a town auditor for the performance of such duties.

The power attempted to be given to the "auditing committee," by the financial meeting, to pass upon, allow, and decide whether claims against the town should be paid was an attempt to appoint an agent for the transaction of town business by law required to be performed by officers known to the law, viz., the town council, which appointment could not have been made even by the town itself.

(5)  *Mandamus.	Undisputed Claim.*

Where a claim against a town is undisputed, and there remains only the plain ministerial duty on the part of the town treasurer to pay it, *mandamus* will lie.

*Portland Stone Ware Co.* v. *Taylor*, 17 R. I. 33, and the cases following it, considered and discussed, and found in harmony with it.

*Mandamus* will lie to compel the payment, by a town treasurer, of a claim against a town which has been allowed and ordered paid by the town council, there being funds in his hands applicable to such payment, his refusal being based on the fact that the claim had not been audited by an "auditing

committee" appointed by a financial town meeting, since the approval by the town council clearly imposes the duty upon the treasurer, and the legal remedy provided by Gen. Laws, 1909, cap. 46, §§ 12, 13, 14, is not sufficiently speedy and adequate to bar the court, in the exercise of a sound discretion, from granting the writ.

A specific remedy in equity does not oust the legal jurisdiction in *mandamus* but only appeals to the discretion of the common law court.

Dubois, C. J., and Blodgett, dissenting.

MANDAMUS.   Writ granted.

JOHNSON, J.   This is a petition for a writ of *mandamus* to compel the respondent town treasurer of the town of Warwick to pay its claim against said town, which has been approved by the town auditor and allowed and ordered paid by the town council.

The answer of the respondent is as follows:

"1.   The respondent Herbert W. Barber, town treasurer, admits that the H. P. Cornell Company, a corporation duly organized under the laws of the State of Rhode Island, and located in the city and county of Providence in said State, has a claim against the town of Warwick, a municipal corporation duly created in said State, for goods sold and delivered according to the account annexed to the petition marked Exhibit A; that said goods were delivered to and used in the town asylum of said town of Warwick; that its bill therefor has been approved by Joseph H. Potter, town auditor, and allowed by the town council of said town of Warwick and ordered paid; that the respondent Herbert W. Barber of said Warwick was on the second day of November A. D. 1909, elected town treasurer of the said town of Warwick and has qualified according to law, and has been town treasurer of said town since the third day of November 1909; that there are funds in the hands of the respondent Herbert W. Barber, town treasurer of the town of Warwick, which are properly applicable and are sufficient for the payment of said claim and that the respondent Herbert W. Barber town treasurer refused to pay the petitioner's bill, but respondent Herbert W. Barber town treasurer denies the conclusions of law attempted to be drawn therefrom as to his duty to pay said bill.

"2. This respondent further answering says that on the third Tuesday of November, November 16, 1909, the annual town meeting of said town of Warwick was held within and for said town by the electors qualified to vote at such meeting in said town, and that at said meeting held as aforesaid the following votes, resolutions or ordinances were adopted:

" 'VOTED: That the town treasurer is hereby directed not to expend any money in payment of any bill or claim against the town unless the bill or claim shall first have been approved by an auditing committee to consist of the person named in this resolution who is hereby elected to serve as such auditing committee for one year from this date at a salary of $200, or, unless said claim or bill shall have been reduced to a judgment against the town. And the holder of any such bill or claim against the town shall be left to collect the same by due process of law whenever said auditing committee shall not have approved the same. In case of any vacancy in said committee by death, resignation or otherwise, the committee on town debt shall elect a person to fill such vacancy, and said committee on town debt are hereby authorized by this meeting to fill such vacancy. It is further

" 'VOTED: That all expenditures to be made from appropriations by this meeting voted shall be subject to the above conditions. The particular and especial duty of this auditing committee will be to guard the appropriations made by this meeting by preventing the expenditure of any of said appropriations for any purpose other than those specified by this meeting. He shall see to it that no appropriation is exceeded, that no part of any appropriation is diverted from the particular department for which the appropriation is made and that orders drawn upon the town treasurer are charged to the proper appropriations. And he shall in every other way possible guard and protect the financial interests of the town.

" 'Said auditing committee is hereby authorized and directed to receive and to have possession of all such bills and claims, after the same have been passed upon by the town council or school committee, as the case may be, and the town auditor,

and he shall return all such bills and claims to the town treasurer's office plainly marked with his approval or disapproval thereof, within five days of the receipt by him of such bills and claims. And it is further voted that Charles H. Allen be and he is hereby elected as such auditing committee.'

"3. This respondent further answering says that he refuses to pay said bill, because the same has not been approved by the auditing committee Charles H. Allen elected at said financial town meeting.".

By stipulation it also appear as follows:

"1. That Joseph H. Potter, of the town of Warwick and county of Kent, in the State of Rhode Island, was, on the eighth day of November, A. D. 1909, elected town auditor of the town of Warwick, for the ensuing year, by the town council of said town; and that said Joseph H. Potter has duly qualified and is acting as said town auditor.

"2. That Charles H. Allen, of said town of Warwick, the auditing committee elected at the town meeting held on the sixteenth day of November, A. D. 1909, has demanded of Herbert W. Barber, town treasurer, possession of the bill of H. P. Cornell Company, that he might approve or disapprove said bill within five days, in accordance with the vote of the town meeting."

Although the committee appointed by the financial town meeting is called, in the resolution providing for its appointment, an "auditing committee," it is to be observed that the town treasurer is directed not to expend any money in payment of any bill or claim against the town without the approval of said committee. The power attempted to be given by said resolution is far greater than that of an auditor, as usually understood.

The minority opinion deduces from Gen. Laws, 1909, cap. 46, § 11, the power of the financial town meeting to appoint such an agent as the financial town meeting appointed in the case at bar. Said section reads as follows: "Towns may and shall elect all such town officers as are, or may be, by law required, and may appoint such other officers as by law em-

powered, and such special agents for the transaction of any town business not by law required to be performed by any officer known to the law, as they may deem expedient."

The minority opinion cites *Foster* v. *Angell*, 19 R. I. 285, in which case the court made the same deduction, the statute then being Pub. Stat. cap. 34, § 11, and held the same to be a sound reason why *mandamus* would not lie in that case, although it held that the first reason, viz., that the claim was a disputed one, furnished a sufficient ground for the denial of the writ. The court proceeded to say: "It is true that said bills have been approved and ordered paid by the town council, and hence that the relator has taken all the necessary steps to enable him to prosecute his claim against the town in an ordinary action at law. It is also true, as contended by counsel for the relator, that the town treasurer is a ministerial officer; and it is clearly his duty to pay all bills which have been properly audited, unless he can show some error or fraud in connection therewith. *Portland Stone Ware Co.* v. *Taylor, supra;* Spelling on Extraordinary Relief, § 1434; *Ireland* v. *Hunnel*, 90 Iowa, 98; *In re State House Commission and State Auditor, infra.* But we do not agree with the contention of counsel for relator that the town exceeded its authority in appointing an auditor, and in requiring that all bills against the town should be approved by him before payment thereof should be made by the town treasurer. Pub. Stat. R. I. cap. 34, § 11, provides that 'Towns may and shall elect all such town officers as are or may be by law required, and may appoint such other officers as by law empowered, and such special agents, for the transaction of any town business not by law required to be performed by any officer known to the law, as they may deem expedient.' The duty of auditing bills against a town is nowhere expressly devolved upon the town council thereof, although it is clearly implied from the provisions of Pub. Stat. R. I. cap. 34, § 12: yet we see no reason why any town may not rightfully require, in addition to their approval of said bills, a further approval by such an agent as it may designate for that purpose before the town treasurer shall pay the same. In short, the money

in the town treasury having been raised by the taxpayers, they evidently have the right to surround the disbursement thereof with all reasonable safeguards. The vote hereinbefore quoted is tantamount to an ordinance of the town regulating the payment of bills; and, it being within the power of the town to pass and enact ordinances for the proper conducting of the business thereof (*Farnsworth* v. *Pawtucket*, 13 R. I. 82, 87), said vote has the force of law, and is absolutely binding upon the respondent, until, at any rate, some power superior to that of the town shall interfere."

In said case, therefore, the court, finding its authority in the section quoted, held that the vote of the financial town meeting, to which power to pass ordinances was not given by the section quoted, was "tantamount" to an ordinance of the town (the *town* having power to pass ordinances), and was absolutely binding upon the respondent town treasurer, until, at any rate, some power superior to that of the town shall interfere. If the vote in question had been an ordinance there would have been no occasion for the use of the word "tantamount." The conclusion arrived at does not follow from the reasons given by the court. The power is given to the town, not to a class of the electors, as distinguished from the whole body of electors, to elect officers and appoint agents. The conclusion arrived at by the court was plainly based on the assumption that under the power given to the *town* by the section quoted, viz., to appoint "such special agents, for the transaction of any town business not required to be performed by any officer known to the law, as they may deem expedient," the *financial town meeting* had power to pass an ordinance (the *town* having power to pass ordinances), and to appoint an auditing committee thereunder, and direct the town treasurer not to expend any money in payment of any bill or claim against the town, unless said bill or claim shall first have been approved by said auditing committee. This assumption, in our opinion, is not justified. The court does not attempt to show how the powers, either of passing ordinances or appointing the class of agents mentioned in said section, passed to the financial town meeting. It does

not appear to have considered that question at all, although the fact that the votes in question were passed at a financial town meeting appears in the court's statement of the proof submitted. While, therefore, the decision in *Foster* v. *Angell* can well be supported upon the ground that the claim in question there was a disputed one and therefore *mandamus* would not lie, we are unable to affirm its soundness upon the second ground. On the contrary, we find, in the case as stated by the court in *Foster* v. *Angell*, no support for the opinion expressed. So in the case at bar we can not agree that said statute, providing that "*towns* may elect all such town officers as are, or may be, by law required, and may appoint such other town officers as by law empowered, and such special agents for the transaction of any town business not by law required to be performed by any officer known to the law, as they may deem expedient," can be construed to give to the *financial town meeting* the power to appoint a committee without whose approval no bill or claim against that town can be paid by the town treasurer, though audited by the town auditor, and allowed and ordered paid by the town council, unless said claim has been reduced to a judgment against the town. Said action considered by itself no more gives the appointment of such special agents to the *financial town meeting* than it gives the election of town officers to such meeting. The taxpayers are the only electors who, under the constitution, can vote "upon any proposition to impose a tax or for the expenditure of money in any town or city," but they do not constitute the town. The inhabitants of the town constitute the town as a body corporate. The other electors of the town have as great voting power, in the election of officers and the appointment of agents mentioned in said section 11, as the taxpaying voters. The powers of election are exercised by all the electors in the town meeting, except in towns divided into voting-districts, and in such case in the meetings in the several districts. The power to impose a tax or to expend money is exercised by the taxpaying voters in the *financial town meeting.* When, in a financial town meeting, the taxpaying electors vote to expend money for a specific purpose

and appropriate a sum of money therefor, the money so appropriated can only be lawfully applied to that purpose. The appropriation when made, however, is for the benefit of the town, of all the inhabitants of the town, and not for the benefit of the taxpayers alone, and the moneys so appropriated become town moneys to be applied for the town purposes for which they were appropriated. While such moneys must be applied to the purposes and only to the purposes for which they were appropriated, the taxpayers in financial town meeting can no longer order or forbid the disbursement of such moneys within and for the purposes for which they were appropriated. If the financial town meeting is not only to appropriate money for a specific purpose, as for the support of the town asylum, but also to insist upon voting again, by itself or its committee, upon the expenditure of the sum required every time a few pounds of meat or a bag of flour is to be purchased, and forbid the payment of every bill incurred by the town through its officers and agents, unless so by itself or its agent voted to be paid, and leave every creditor of the town to his action at law, there will be no need for any other officer or agent of the town in the matter of the expenditure of money except the committee appointed by the financial town meeting, and Gen. Laws, R. I. 1909, cap. 50, § 4, will be of little effect. The section reads: "The town council of each town shall have full power to manage the

(3) affairs and interests of such town, and to determine all such matters and things as shall by law come within their jurisdiction." The words "full power to manage the affairs and interests of such town" seem to justify the construction given to them by the towns since the statute was first enacted, viz.: that they constitute the town council as the governing body of the town. It is difficult to see how the language could have been amplified so as to more clearly express this intent. That the town council is such governing body of the town, and that it has full power to pass upon, adjust, and order paid claims against the town, is further clearly indicated by the statutes providing for the collection of claims against towns. Sections 12 and 13, cap. 46, Gen. Laws, 1909. Thus, "Sec. 12. Every

person who shall have any money due him from any town or city, or any claim or demand against any town or city, for any matter, cause or thing whatsoever, shall take the following method to obtain the same, to wit: Such person shall present to the town council of the town, or to the city council of the city, a particular account of his claim, debt, damages or demand, and how incurred or contracted; which being done, in case just and due satisfaction is not made him by the town or city treasurer of such town or city within forty days after the presentment of such claim, debt, damages or demand aforesaid, such person may commence his action against such treasurer for the recovery of the same."

"SEC. 13. On judgment being obtained for such debt, damages or demand, in case said treasurer shall not have sufficient of the money of such town or city in his hands to satisfy and pay the judgment obtained and the charges expended in defending such suit, the said treasurer shall make application to any justice of the peace in such town or city, and thereupon the justice shall grant a warrant to the town sergeant of such town, requiring him to warn the electors of the town to hold a town meeting, at such time and place as shall be appointed, or to the mayor of such city requiring him to call a special meeting of the city council of such city, for the speedy ordering and making a tax, to be collected for the reimbursement of said treasurer."

These statutes also throw light on the question which we have considered, *supra, i. e.,* that the money after it has been raised by a tax and paid to the town treasurer is no longer the money of the taxpaying voters, but the money of the town. It is the money of the town before the appropriations have been made if already in the hands of the town treasurer, and in making appropriations of the same for town purposes the taxpaying voters in financial town meeting are simply setting apart portions of such money for certain purposes. The statute cited *supra* provides for the presentation of claims to the town council, the body established by statute and given "full powers to manage the affairs and interests of such town." The statute concerning collection of claims against a town, passed in 1659,

provided "that it shall be lawfull for any plaintiff against any towne in this Collony in any actionable case, to arrest the Towne Treasurer, who (beinge arrested) shall consult with the towne or Towne Counsell, whether to compound or stand out the suite." It is to be observed that even at that early date the town treasurer was to "consult with the Towne or *Towne Counsell* whether to compound or stand out the suite."

By an act passed in 1677, claims against a town were to be presented to the town meeting as a condition precedent to a suit.

At the January session, 1854, p. 1059, it was provided as follows: "Any person having any money due him from any town, or any demand against any town for any matter, cause or thing whatever, in order to obtain the same, may present a particular account of his debt or demand, and how contracted, to the town council of any town which is divided into election districts with the same effect as if presented to the electors when legally assembled in *town* meeting in conformity with the 13th section of the act of which this is in amendment." This amendment was rendered necessary by the fact that in towns divided into voting-districts there was no longer any general town meeting. The act of which the above was an amendment, was "An act declaring towns to be bodies corporate, and prescribing the manner of recovering debts due from towns." Dig. 1844, p. 296.

General Statutes, 1872, cap. 31, § 11, provided for the presentation of claims to town councils in all cases. This provision has been continued, and is now found in Gen. Laws, 1909, cap. 46, § 12, quoted *supra.*

After the adoption of the constitution, although the two classes of voters met together in town meeting, propositions to impose a tax or for the expenditure of money were necessarily voted upon only by the taxpaying voters. Gradually financial town meetings were provided for by special statutes for the different towns, for convenience in towns not divided into voting-districts, and from necessity in towns so divided, as in such towns the electors no longer came together on the general town-meeting day.

Chapter 402 of the Public Laws, passed April 30, 1909, is as follows: "Section 1. Chapter 40 of the General Laws, entitled 'Of the town council,' is hereby amended by adding thereto the following section:

" 'Sec. 42. In addition to the other officers which the town council of any town is authorized to elect, the town council of any town may elect one or more town auditors, prescribe their duties by ordinance, and fix their compensation.'

"Sec. 2. This act shall take effect from and after its passage, and all acts and parts of acts, and all town ordinances and by-laws, inconsistent herewith are hereby repealed."

November 8th, 1909, the town council passed the following ordinance:

"An Ordinance Prescribing the Duties of and Fixing the Compensation of Town Auditor:

" It is ordained by the Town Council of the Town of Warwick, in regular and lawful meeting assembled, as follows:

" Section 1. The Town Council shall annually, at its first meeting elect one or more Auditors.

" Sec. 2. The Auditor or Auditors so elected shall be duly sworn to the faithful performance of their duties.

" Sec. 3. It shall be the duty of said Auditor or Auditors so appointed, to examine all claims, debts, dues and demands presented to said town for payment for any and all work or services rendered or performed for and in behalf of the town, or for any and all stock and materials furnished to said town for its use upon any of its highways, bridges, public buildings or for any department of said town; and to pass upon said claims and report his findings to the Town Council.

" Sec. 4. Said Auditor so appointed shall file a bond for the faithful performance of his duty, said bond to be of such amount as shall be satisfactory to the Town Council and to run to the Town Treasurer as liquidated damages for the breach of any of the duties prescribed herein.

"Sec. 5. The compensation of said Auditor or Auditors shall be fixed annually by the Town Council.

SEC. 6. This Ordinance shall take effect immediately upon its passage."

(4)   As the most that is claimed for the "auditing committee" appointed by the financial town meeting is that he is an agent for the transaction of "town business not by law required to be performed by any officer known to the law," it seems clear that, since the passage of the town ordinance by the town council under chapter 402 of the Public Laws, prescribing that "it shall be the duty of said Auditor or Auditors so appointed, to examine all claims, debts, dues and demands presented to said town for payment for any and all work or services rendered or performed for and in behalf of the town, or for any and all stock and materials furnished to said town for its use upon any of its highways, bridges, public buildings or for any department of said town; and to pass upon said claims and report his findings to the Town Council," and the election of a town auditor, *there is an officer known to the law for the transaction of the town's business of auditing accounts,* and that upon the passage of said ordinance and the election of said auditor there could remain in the financial town meeting no right to appoint an agent for the performance of *such* duties. The auditing committee attempted to be appointed by said vote was directed not only to audit bills and claims against the town but was given power *to decide whether such bills and claims should be paid by the town treasurer.* The section relied upon in the minority opinion, section 11, cap. 46, Gen. Laws, 1909, authorizes towns to appoint "such special agents for the transaction of any town business *not by law required to be performed by any officer known to the law,* as they may deem expedient." As we have seen, by section 4, cap. 50, Gen. Laws, 1909, "The town council of each town shall have full power to manage the affairs and interests of such town, and to determine all such matters and things as shall by law come within their jurisdiction."

As we have before shown, the statute requires the presentation of claims to the town council as a prerequisite to a suit against the town. It can not well be supposed that the presentation of claims is required to be made to a body with no

power to act upon them, either to order them paid or refuse to do so.   If any matter or thing can be said by law to come within the jurisdiction of the town council, it seems clear that claims so presented do so come within it.   Considering said sections 12 and 13, chapter 46, in connection with said section 4, chapter 50, it seems to us there can be no question as to the power of the town council to pass upon, allow, and order paid claims against the town, or as to the duty of the town treasurer to pay claims so allowed and ordered paid.   The power attempted to be given to the auditing committee by the vote of the financial town meeting in this case, to pass upon, allow, and decide whether bills and claims against the town should be paid, was an attempt on the part of said financial town meeting to appoint an agent for the transaction of town business by law required to be performed by officers known to the law, viz., the town council. The appointment of an agent to transact *such* town business could not be made even by the *town itself,* under the provisions of said section 11, still less by the *financial town meeting to whom the power of appointing such an agent is not given by the section.*   What is attempted by the votes passed at the financial town meeting is to transfer from the town council to the auditing committee the powers of allowing and ordering payment, by the town treasurer, of bills and claims against the town.

In what has been said upon the case of *Foster* v. *Angell,* we have not been unmindful of the doctrine of *stare decisis,* but in our opinion the court in that case does not state the law correctly.   We feel confident that if the court had examined the question as carefully as it would have done if its decision had depended solely upon the point discussed, the law would have been differently interpreted.   The reasoning employed by the court so clearly fails to support the opinion given, that it should not be followed.   If the financial town meeting is to have the power to pass ordinances and elect agents with powers such as were attempted to be given by it in this case, the source of such power should be legislative, not judicial.

(5)        The respondent admits that the petitioner has a claim against the town of Warwick for goods sold and delivered according to

the account annexed to the petition; that said goods were delivered to and used in the town asylum of said town; that its bill therefor has been approved by the town auditor, and allowed by the town council of said town and ordered paid; that there are funds in the hands of the respondent Herbert W. Barber, town treasurer of said town, which are properly applicable and are sufficient for the payment of said claim, and that he refuses to pay said claim because the same has not been approved by the auditing committee elected at said financial town meeting.

These admissions exclude everything in the nature of defence. The refusal to pay is based solely on the fact that the claim has not been approved by the "auditing committee" appointed at the financial town meeting.

Under these admissions, no defence to a suit at law against the town remains; for no one has ventured to suggest that the approval or disapproval of the "auditing committee" appointed by the financial town meeting would be at all material on the trial of such a suit. There remains, therefore, only the plain ministerial duty, on the part of the town treasurer, to pay the claim.

The minority opinion states, as a further objection to the granting of the writ, "that the petitioner has a plain and adequate remedy at law by his action against the town by the express provisions of the statute," and proceeds to argue that the previous decisions of this court upon this question should be overruled. This would render all that has gone before in said opinion unnecessary, as a decision upon this point adverse to the petitioner would have disposed of the case at the threshold. In these circumstances a review of these cases seems proper in order that we may clearly understand just what it is proposed to overrule.

In *Portland Stone Ware Company* v. *Taylor*, 17 R. I. 33, 34, 35, 36, the court said: "It appears that authority was given to the district by Pub. Laws, R. I. cap. 726, of June 13, 1888, to borrow a sum not exceeding one hundred thousand dollars, to be used by said district for roads, sewerage, water supply,

fire purposes, and public buildings, and for no other purposes, under the direction of the district council; that the district duly authorized the district council to borrow the sum of one hundred thousand dollars upon the bonds of the district, which has been done, and the proceeds have been deposited in the Wakefield National Bank, as a special deposit for the purposes aforesaid. In pursuance of the authority so given, the district council contracted with the Portland Stone Ware Co. for the drain pipe to be used for the purpose of sewerage, and, after delivery, gave to said company two orders directing the treasurer of the district to pay the bills thus incurred out of said fund, which is ample to meet said orders; but the treasurer refuses to pay said orders, whereupon these petitions for mandamus are filed. . . . We come, then, to the question whether the creditor can maintain his petition. It appears that the fund, out of which payment is sought, is a special fund, on special deposit for a special purpose. The expenditure of this fund is expressly given to the district council. So far as the treasurer is concerned, he has simply the ministerial duty to pay it out under the direction of the council. In cases of this kind mandamus will lie. . . . But the respondent contends that the creditor has a remedy by action against the district, which is not only adequate but exclusive, and that no mandamus can issue until after judgment and refusal or neglect to pay. The cases already cited are sufficient to show that mandamus may issue without an action, and why should we say that a party must sue for a claim that, so far as appears, is not and cannot be disputed? The accounts are allowed by the proper authority, and ordered to be paid from a fund set apart for the purpose for which the debt was incurred. This is all that could be done on an audited account. Indeed, it is an audited account, upon which the duty of a treasurer, unless he can show some error or fraud, on account of which this court should withhold its order, is the ministerial duty to pay to the extent of the fund. To hold otherwise would enable a treasurer, of his own motion, to put the creditor to the delay and the district to the expense of a suit, and that, too, against its will and order.

Moreover, the judgment in such case would be against the district generally, and might be larger in amount than the sum authorized; whereas, in the present proceedings, there can be no order beyond the amount of the fund."

In *Simmons* v. *Davis*, 18 R. I. 47, the court said: "The case as it now stands, therefore, is one in which the petitioner on the one hand, holds an order on the town treasurer for payment, in the sum of one hundred dollars, which the petitioner contends, and offers proof to show, is justly due and owing to him, while on the other hand the respondent contends and offers proof to show, that said order was erroneously issued, that said claim is fraudulent, and that said town is not indebted to the petitioner in any sum whatsoever. In other words, there is a dispute between the petitioner and the respondent as to the validity of the claim in question, and as to the liability of the town to pay the same. This being so, we think the petitioner should be left to his action at law to substantiate his claim. For it is only in a clear case of indebtedness on the part of a municipal corporation, that the court will compel payment by writ of mandamus. Nor will the court in such a proceeding attempt to decide as to the validity of a disputed claim. See *Portland Stone Ware Co.* v. *Taylor*, 17 R. I. 33."

In *Times Pub. Co.* v. *J. Ellis White, City Treas.*, 23 R. I. 334, the court said: "We think the petition states a case for *mandamus*, and that the demurrer must therefore be overruled. It appears from the petition that the petitioner has a just claim against the city, which was properly contracted by the school committee thereof; that said claim has been duly passed upon and ordered paid by said school committee; that there are funds in the hands of the defendant subject to the order of said school committee, which are properly applicable to and are sufficient for the payment of said claim, and that he has no defence whatever which could be set up in any court against the payment thereof. In short, the case shows the mere refusal on the part of the defendant to discharge a plain ministerial duty; and it is clear that in such a case mandamus will lie. *Portland Stone Ware Co.* v. *Taylor*, 17 R. I. 35."

In *Foster* v. *Angell*, 19 R. I. 285, 287, the court said: "It is true that said bills have been approved and ordered paid by the town council, and hence that the relator has taken all the necessary steps to enable him to prosecute his claim against the town in an ordinary action at law. It is also true, as contended by counsel for the relator, that the town treasurer is a ministerial officer; and it is clearly his duty to pay all bills which have been properly audited, unless he can show some error or fraud in connection therewith. *Portland Stone Ware Co.* v. *Taylor, supra.*"

In *Foster* v. *Angell*, the court, however, dismissed the petition, as stated *supra*, because the bill had not been approved by the auditing committee appointed by the financial town meeting.

These cases are decisive of the case at bar on this question. They state the rule so clearly that it need not be restated here.

The minority opinion, attacking the authority of these cases, says: "The latest case in this court in which *Portland Stone Ware Co.* v. *Taylor*, was relied on for the issuance of mandamus was the recent case of *Putnam Foundry and Machine Co.* v. *Town Council*, 28 R. I. 422 (1907) in which the relator sought to compel the respondent 'to cause to be executed a contract in writing for the reconstruction of the heating apparatus of the town building of said town of Barrington.' In denying the writ, Mr. Justice Johnson comments upon and commends the application of *Portland Stone Ware Co.* v. *Taylor*, to the facts and the law presented in that case and then proceeds, as follows: 'To warrant the issuance of a writ of mandamus, the petitioner must show first a legal right to have the act done which is sought by the writ; and second, it must appear that the act which is to be enforced by the mandate is that which it is the plain legal duty of the respondent to perform, without discretion either to do or refuse; and third, that the writ will be availing as a remedy, and that the petitioner has no other plain, speedy, and adequate remedy. *Sweet* v. *Conley*, 20 R. I. 381.'

"We are of the opinion that the rule thus laid down is correct and should hereafter be followed. While it is not necessarily opposed to *Portland Stone Ware Co.* v. *Taylor*, it

unquestionably states the correct rule and the previous decisions of the court above cited, which have sought to extend the scope of the decision in *Portland Stone Ware Co.* v. *Taylor*, should not longer, if they have heretofore, be considered as justified by it. In thus deciding we change no property rights and impair no vested interests, but merely say that this remedy is not available except upon certain conditions, one of which is that there is not other 'plain, speedy, and adequate remedy;' and thus the rights of all relators are fully preserved and protected."

We have no hesitation in agreeing that the rule laid down in *Putnam Foundry & Machine Co.* v. *Town Council* is correct and should be followed. In that case, however, after stating the facts in *Portland Stone Ware Co.* v. *Taylor*, the court said: "The mere statement of the case is sufficient to show that it had nothing in common with the case at bar, except that it was a petition for *mandamus.*" That statement applies with equal accuracy in comparing *Putnam Foundry & Machine Co.* v. *Town Council* with the case now before us. There it was sought by *mandamus* to compel the town council *to cause to be executed* a contract in writing for the reconstruction of the heating apparatus of a town building. Here it is sought to compel the respondent town treasurer to pay a bill against the town for goods sold and delivered; and the respondent admits that the petitioner has a claim against the town for goods sold and delivered according to the account annexed to the petition; that said goods were delivered to and used in the town asylum of said town; that the bill therefor has been approved by the town auditor, and allowed by the town council of said town and ordered paid; that there are funds in the hands of the respondent town treasurer which are properly applicable and are sufficient for the payment of said claim.

As to the statement quoted *supra*, that "the previous decisions of the court above cited, which have sought to extend the scope of the decision in *Portland Stone Ware Co.* v. *Taylor*, should not longer, if they have heretofore, be considered as justified by it," it appears to us that the assumption that said

cases have sought to extend the scope of the decision referred to is not justified. In *Portland Stone Ware Co.* v. *Taylor* the court says: "It appears that authority was given to the district by Pub. Laws, R. I. cap. 726, of June 13, 1888, to borrow a sum not exceeding one hundred thousand dollars, to be used by said district for roads, sewerage, water supply, fire purposes, and public buildings, and for no other purposes, under the direction of the district council; that the district duly authorized the district council to borrow the sum of one hundred thousand dollars upon the bonds of the district, which has been done, and the proceeds have been deposited in the Wakefield National Bank, as a special deposit for the purposes aforesaid." The essential facts were the authority given by the General Assembly to the district to borrow a certain sum to be used for certain purposes under the direction of the district council; the authority given by the district to the district council to borrow said sum upon the bonds of the district, the contract by the district council with the Portland Stone Ware Co. for materials to be used for sewerage and the delivery of said materials; the orders given by the district council directing the treasurer of the district to pay the bills thus incurred out of said fund; and the refusal of the treasurer to pay said orders. The deposit of the sum raised by the sale of the bonds in the bank was merely a proper incident in the transaction, but could in no way affect the question of *mandamus* to the treasurer to pay the orders. The *special* nature was given to the fund by the act of the General Assembly, limiting the purposes for which it could be used under the direction of the district council. In other words, it could properly be applied to those purposes and to no other purposes. It was clear that it was properly applicable to these purposes, and no proof that it was so applicable was needed. It was therefore clear that *mandamus* would lie. We have quoted *supra* what the court said as to the contention that the creditor had a remedy at law against the district, not only adequate but exclusive, and that *mandamus* would not issue until after judgment and refusal to pay, We will therefore only quote the words, p. 36, "and why should we say that a

party must sue for a claim that, so far as appears, is not and cannot be disputed."

The other cases in this State have not sought to extend the scope of *Portland Stone Ware Co.* v. *Taylor.* The cases are in harmony upon this question.

It is true that one of the rules at common law is that the writ will not issue if there is a plain, adequate, legal remedy. A multitude of cases could be cited where the rule has been rigidly applied. A great many cases could also be cited where the rule has been modified and greater regard paid to the adequacy of the remedy than in the older cases.

In *Tawas &c., R. R.* v. *Iosco Circ. Judge,* 44 Mich. 483, the court said: "In granting this remedy, courts are always disposed to confine it to cases where there is no other adequate specific remedy. But the existence of a remedy of another nature which is not adequate furnished no reason for refusing it, if the necessity of justice requires it. We had occasion in *La Grange, relator,* v. *State Treasurer,* 24 Mich. 468, to consider this jurisdiction quite fully and we think the views there expressed are in accordance with the soundest authority. Mandamus is a prerogative writ designed to afford a summary and specific remedy in those cases where without it the party will be subjected to serious injustice. As pointed out by the eminent authorities there cited, it is from its very nature a remedy that cannot be hampered by any narrow or technical bounds. The right coupled with the necessity of such a vindication of it supports the jurisdiction, and the court in using its discretion, while careful not to use this writ when it is not essential, will apply it where it is."

In *La Grange* v. *State Treasurer,* 24 Mich. pp. 475-6, 477, cited in the last-mentioned case, the court said: "In these cases of municipal bonds, the townships cannot be made to suffer for the legally wrongful action of their officers, and they have a right to recall the unauthorized securities. The duty of the treasurer is not discretionary. It is their absolute right to demand, and his absolute duty to surrender, what is held in the files of the office in their wrong. The duty is unconditional and it is clear.

"We are then to consider whether a *mandamus* is the proper remedy for a refusal to comply with this duty.

"It was urged on the argument that this writ will only lie where there is a positive statutory duty and an entire absence of any other remedy. And it is claimed that the decisions heretofore made sustain this view. We do not know of any such doctrine, and have never understood it to have been established in this state or elsewhere. In the frequent instances of application for this writ, the occasion has quite as often been to enforce duties not imposed by statute, as obligations which were statutory. There may very possibly be found isolated expressions, which, apart from their context and the occasion of their utterance, might favor one of the grounds claimed. Thus, in *People* v. *Judges of the Branch Circuit Court*, 1 Doug. Mich. R. 319, it was said there must be 'no other remedy.' In that case there was a better remedy in the ordinary course of law which reached all that could be desired. But in *People* v. *Judge of the Wayne Circuit*, 19 Mich. 296, the doctrine was laid down more guardedly, that a relator must show 'a clear legal right, and that there is no other *adequate* remedy.' And in *People* v. *State Insurance Company*, 19 Mich. R. 392, it was expressed more fully that the writ might issue for a specific duty where there is no other 'specific and adequate remedy.' . . .

"For most rights the ordinary legal remedies are ample to prevent a failure of justice, as upon private contracts a judgment for damages will usually suffice. But there are cases where, if contracts cannot be enforced specially, there will be a failure of justice; and as the law can give no specific remedy in such cases, parties are compelled to resort to equity. If the law had the requisite machinery, no doubt it would so interfere as to render a resort to equity needless. And in all cases where it can enforce rights specifically, and no other relief is adequate, it certainly would be unjust not to do so. Unfortunately its powers are limited. But in cases where the right is clear and specific, and public officers or tribunals refuse to comply with their duty, a writ of *mandamus* issues for the very purpose, as declared by Lord Mansfield, of enforcing specific relief. It is

the inadequacy, and not the mere absence, of all other legal remedies, and the danger of a failure of justice without it, that must usually determine the propriety of this writ. Where none but specific relief will do justice, specific relief should be granted if practicable. And where a right is single and specific it usually is practicable.

"The question then arises whether there is any other adequate, specific, legal remedy. . . .

"There is the strongest possible reason why a party should not be turned over to the tedious and dilatory process of a long suit, when there are no issues that need it. The only question that could arise in the class of cases now before us is, whether the bonds are in the possession of the respondent. If they are, the right to have them restored is a legal conclusion not open to question.

"The same reasons would apply to render it improper to turn a party over to a suit in replevin, if there were not still more serious objections to it, as well as doubts of its applicability."

In *Thomas* v. *Mason* (W. Va.), 26 Lawyers' Rep. Ann. 727, 733, the court said: "Again, it is said that plaintiff's application for this writ is premature; he must first reduce his claim to judgment, and then apply; and it is added, on behalf of defendant, 'when he sues at law we will meet him on the merits, and show that the facts alleged are not true, and that his claim is without merit.' But the answer to that is, this writ and petition must be taken at their face value, and the facts alleged therein as true; and among them we find the averment that there is no money in the treasury of the town to pay this claim, and the town refuses to pay, or to lay a levy for that purpose, or in any way to provide for its payment. Upon principle, why sue in assumpsit? An ordinary suit at law, ending in an ordinary judgment, would bring him no nearer fruition than when he commenced. In this case, where no facts are in dispute, such a suit would be a vain and idle thing, with mandamus still to be brought as his only means of compelling payment; for this municipal corporation is possessed of nothing tangible,— nothing subject to levy. His right is undisputed, in our view

of the law, but this action of assumpsit would leave its violation just as far from being redressed as when he put that remedy in motion, when to this remedy he must come at last, as his only means of obtaining satisfaction,—a remedy with all the judicial methods of making up and trying all issues of law and fact. There is no reason, and there can be none, which does not impliedly involve a flat contradiction of one or more facts which have been accepted as true. In this day, therefore, the plaintiff should not be sent this long way round to reach a point nearly and directly in view."

In the *Matter of Freel,* 148 N. Y. 165, an appeal by the comptroller of the city of Brooklyn from an order made by the general term of the second department, affirming an order of the special term, which directed that a peremptory *mandamus* issue requiring the comptroller to approve of the relator's claim and make and sign a warrant for its payment, the court said (p. 170): "The first question presented, and with our views of the case the only one that need be determined, is whether the comptroller in approving such claims and issuing warrants for their payment acts judicially or only ministerially. . . . We think it was not the intention of the statute requiring the comptroller to approve of claims against the city to give him any judicial power in regard to a claim where, by the agreement under which it arose, the action of the engineer and commissioner was to be final and conclusive. There may be cases where the comptroller would be authorized to act otherwise than ministerially as to claims presented to him for his approval, but in a case like this, where, by the terms of a valid contract between the parties, the action of the engineer and commissioner is made conclusive, we think the comptroller has only a ministerial duty to perform in the approval of the claim.

"If fraud on the part of the contractor or officers of the city had been established, it may well be that it would invalidate the action of the engineer and commissioner, so that a certificate given would be invalid. But such is not this case."

In *People ex rel Rodgers* v. *Coler,* 166 N. Y. 1, the court said: "There is no dispute with respect to the facts upon which this

controversy depends. They are all admitted upon the record, and the appeal involves only questions of law. . . . The duty enjoined upon the comptroller, the performance of which is commanded by the writ, was ministerial; and if the relator was not entitled to the writ absolutely, and as matter of legal right, the court below had power to grant it, in the exercise of discretion, and, having granted it, the action of the court in that respect is not reviewable here."

In *People ex rel Beck* v. *Coler,* 34 App. Div. 167, 168, 169, cited on another point in *People ex rel E. C. T. Club* v. *State R. Commission,* 190 N. Y. 31, Cullen, J. said: "On December 10, 1897, at a meeting of the inhabitants of school district No. 1 of the towns of Castleton and Middletown, Richmond county, a resolution was passed authorizing the trustees of the school district to purchase a new site and build a new schoolhouse thereon, and for that purpose to raise the sum of $80,000 by tax upon the district. Thereafter the trustees of the school district entered into a contract with the relator for the construction of the school building for the sum of $79,500, payments to be made as the work progressed, on the certificate of the engineer and the architect in charge of the construction of the building. The relator commenced the prosecution of the work, and in February, 1898, received a certificate from the engineer and the architect that he was entitled to a payment of at least the sum of $750. This certificate was presented to the comptroller for payment, and to the auditor of the borough for audit. The comptroller refused payment, and the auditor declined to act on the claim. Thereupon the relator applied to the special term for a writ of *mandamus* to the auditor and comptroller to ascertain and certify the value of the work performed and materials furnished by the relator under his contract, and to audit and allow such value as ascertained, not exceeding the amount certified by the engineer and the architect. From an order granting the writ of *mandamus* as prayed for, this appeal is taken.

"The first claim of the appellants is that the relator's remedy is by action and not by *mandamus.* The rule that a *mandamus*

will not be granted where the party has a remedy by action is one addressed to the sound discretion of the court, and is not of universal application. This in *Matter of Freel* (148 N. Y. 165), the comptroller of the city of Brooklyn was required by a writ of peremptory *mandamus* to approve the relator's claim for work and material furnished under a contract with the city for the construction of a reservoir, and to make and sign a warrant for its payment. There was no question in that case but that the relator might have sued the city for the claim in an action at law. In *People ex rel Kings Co. Gas Co.* v. *Schieren* (89 Hun. 220), a writ of mandamus was issued against the comptroller and auditor to examine the relator's claim for gas furnished under a contract with the city, and to certify the value thereof. Undoubtedly, also, in this case an action on the claim would lie. We are of opinion that, where the right of a party to payment from the city is clear, and there are funds on hand applicable to such payment, the court may and will, in the exercise of a sound discretion, compel by mandamus a ministerial officer to audit and pay the claim; though if the city itself repudiated or denied the existence of the obligation, the rule would be different."

In *Ray* v. *Wilson* (Fla.), 14 Lawyers' Rep. Ann. 778, the court said: "The duty to pay, where the paying officer has the funds to pay with, and the officers auditing and ordering payment have acted within the scope of their powers and there is no fraud attached to the claim, is merely ministerial, and mandamus will lie to compel its payment. It is true, the right to this remedy was doubted, though not decided, in *People* v. *Lawrence*, 6 Hill, 244, but such right is affirmed in the later New York cases. If the claim is not one of a character payable by the county or municipality, or if the board auditing it and ordering its payment had no authority to do so, or if there is fraud (or, it may be mistake, *Shirk* v. *Pulaski County*, 4 Dill, 209), neither of which conditions is pretended to exist here, the paying officer should refuse to pay it. It is true that in some cases the right to the writ is put on the ground that an ordinary action at law will not lie against the county or municipality on the claim. We

fail to see that such an action against the county is a sufficient remedy. If the claim is lawful and has been audited and ordered paid. by the proper authority, and the officer whose function it is to pay has been furnished with and has the public money for its payment, there is a palpable insufficiency in a, remedy which would give him a personal judgment against the county or municipality, to be followed it may be by a mandamus. to compel the levy of a tax to pay the same in case the money in the treasury should have been used, or there was not enough to pay the accrued interest, and all this too, simply because an officer whose duty it is to pay lawful claims sees fit to refuse to do his duty. The holder of such a claim has an immediate right to the money provided and held for his payment, and a remedy which imposes any of the delay indicated and its attendant expense, is entirely inadequate. A remedy which will avoid mandamus must be both specific and adequate."

High, Extr. Leg. Rem. § 356, states the rule: "The act of paying a demand or claim against a municipal corporation, after it has been duly audited and the amount fixed, like the act of drawing a warrant upon the disbursing officer just considered is regarded merely as a ministerial duty, unattended with the exercise of any judgment or discretion, and hence subject to control by mandamus. And where claims against a municipal corporation have been duly audited and allowed and payment is ordered by the proper authority, and there remains only the ministerial duty on the part of the treasurer or other disbursing officer of making the payment, *mandamus* will lie for a refusal to perform this duty, there being no other adequate and specific remedy for the party aggrieved."

2 Spelling, Injunc. and other Extra. Rem. § 1375, states the rule as follows: "In order that the existence of another remedy shall constitute a bar to relief by mandamus, such other remedy must not only be an adequate remedy in the general sense of the term, but it must be specific and appropriate to the circumstances of the particular case. It must be such a remedy as is calculated to afford relief upon the very subject of the con-

troversy.   For if it is not adequate to afford the party aggrieved the particular right which the law accords him, *mandamus* will lie, notwithstanding the existence of such other remedy.   In other words, it is not merely the absence of other legal remedies, but their inadequacy coupled with the danger of failure of justice, that would result without interference by an extraordinary remedy which usually determines the propriety of this species of relief.  .  .   The remedy at law which will operate as a bar to mandamus must generally be such a remedy as will enforce a right or the performance of a duty.   A remedy cannot be said to be fully adequate to meet the justice and necessities of a case, unless it reaches the end intended and actually compels a performance of the duty in question, and is not an adequate remedy within the meaning of the rule under consideration.   Such other remedy, in order to constitute a bar to mandamus, must be adequate to place the injured party, as nearly as the circumstances of the case will permit, in the position which he occupied before the injury, or omission of duty complained of.

"The controlling question is not, 'has the party a remedy at law?' but 'Is that remedy fully commensurate with the necessities and rights of the party under all the circumstances of the particular case?'   Or, as was said in one case, 'To supersede the remedy by mandamus the party must not only have a specific remedy, but one competent to afford relief upon the very subject-matter of his application, and one which is equally convenient, beneficial, and effective as the proceeding by *mandamus*."   The case last quoted by Spelling is *Raisch* v. *Board of Education,* 81 Cal. 542, 550, citing *Fremont* v. *Crippen,* 10 Cal. 211.

From these cases and authorities it appears that this court is not without support upon this question in other jurisdictions.

The minority opinion further says:  "The overwhelming weight of authority in other jurisdictions clearly supports the doctrine affirmed in *Putnam Foundry & Machine Co.* v. *Town Council of Barrington, supra,* that the duty to be performed must be clearly imposed by law, and that the petitioner has no

other adequate remedy," and then says: "In the case at bar there is no such duty imposed by law and the petitioner has a plain and adequate remedy at law specifically provided for the very case here presented." As to the statement that "in the case at bar there is no such duty imposed by law," we have already quoted Gen. Laws, 1909, cap. 50, § 4, *supra*: "The town council of each town shall have full power to manage the affairs and interests of such town, and to determine all such matters and things as shall by law come within their jurisdiction," and have said, "The words 'full power to manage the affairs and interests of such town' seem to justify the construction given to them by the towns since the statute was first enacted, viz.: that they constitute the town council as the governing body of the town. It is difficult to see how the language could have been amplified so as to express more clearly this intent. That the town council is such governing body of the town, and that it has full power to pass upon, adjust and order paid claims against the town is further clearly indicated by the statutes providing for the collection of claims against towns. Sections 12, and 13, cap. 46, Gen. Laws, 1909." This court in *Foster* v. *Angell, supra,* said: "The duty of auditing bills against a town is nowhere expressly devolved upon the town council thereof, although it is clearly implied from the provisions of Pub. Stat. R. I. cap. 34, § 12," which is the same as cap. 46, § 12, Gen. Laws, 1909. Being clearly implied from the words of the statute, it is the law, and the duty is *imposed by law* as effectually as if specifically provided by the statute.

As to the further statement in the minority opinion that "the petitioner has a plain and adequate remedy at law specifically provided for the very case here presented," the remedy at law exists. There can be no doubt as to that. Is it sufficiently speedy and adequate to forbid the exercise of the court's discretion in granting the writ? The legal remedy provided is found in Gen. Laws, 1909, cap. 46, §§ 12, 13, and 14. Section 12 provides "that every person who shall have any money due him from any town or city, or any claim or demand against

any town or city for any matter, cause or thing whatsoever shall take the following method to obtain the same." Then follow the provisions that a particular account of his claim, debt, damages, or demand, and how incurred or contracted, shall be presented to the town or city council; and, that being done, if just and due satisfaction is not made him within forty days thereafter, he may commence his action against the treasurer for the recovery of the same.

Section 13 provides that in case, after judgment obtained, the treasurer shall not have in his hands sufficient money of the town or city to pay said judgment and the costs and charges expended in defending the same, the treasurer shall apply to a justice of the peace for a warrant to warn the electors to hold a town meeting for the speedy ordering and making of a tax to be collected for the re-imbursement of the treasurer.

Section 14 provides, in case the electors, upon warning as provided in section 13, shall not take due and effectual care to re imburse, pay, and satisfy said treasurer the money, costs, and charges by him expended, or recovered against him, that upon petition in the nature of a petition in equity to the Superior Court, setting forth the facts, the court may order the assessors of the town or city to assess upon the ratable property of said town or city, and the collector to collect, a tax sufficient for the payment of said judgment, with all incidental costs and charges, and the expense of assessing and collecting such tax. Such is the procedure prescribed, and such is the remedy.

The petition to the court, provided for, is a petition "in the nature of a petition in equity." It is well settled that a specific remedy in equity does not oust the legal jurisdiction in *mandamus*, but only appeals to the discretion of the common-law court. However, if we consider the remedy by petition in the nature of a petition in equity as simply a legal remedy that does not render it any more speedy and adequate than it would be if considered as a remedy in equity.

Is any good purpose served in remanding the petitioner to such a legal remedy as is provided in said sections 12, 13, and 14, cap. 46, Gen. Laws, 1909? Is it a proper exercise of

the discretion of the court to send the petitioner this long way around, which may result finally in the Superior Court, upon petition, ordering the assessors of the town of Warwick to assess, and the collector to collect, a tax sufficient for the payment of the judgment obtained, when the petition before us and the answer of the respondent show plainly that there is no issue to be tried in a suit at law? As the court said in *La Grange* v. *State Treasurer*, 24 Mich. *supra:* "There is the strongest possible reason why a party should not be turned over to the tedious and dilatory process of a long suit, when there are no issues that need it." And as the court said in *Thomas* v. *Mason* (W. Va.), 26 L. R. A. *supra:* "In this case, where no facts are in dispute, such a suit would be a vain and idle thing with *mandamus* still to be brought as his only means of compelling payment; for this municipal corporation is possessed of nothing tangible,—nothing subject to levy." And in the case at bar, while *mandamus* would not have to be brought after judgment, the proceeding by petition in the nature of a petition in equity to the Superior Court to order the assessment and collection of a tax to pay the judgment, would be quite as dilatory a proceeding as the *mandamus* referred to in the Florida case. Upon authority and sound reason, the legal remedy provided by statute in this case is not sufficiently speedy and adequate to bar this court, in the exercise of a sound discretion, from granting the writ of *mandamus.*

A proper case is presented. The petition for the writ is granted.

Parkhurst and Sweetland, JJ., concur.

BLODGETT, J. (dissenting.) I am unable to assent to the conclusion which the majority of the court have reached in this case. Inasmuch as the questions here sought to be raised involve the control of the expenditure of enormous sums of money, affect the government of every town in the State, bring into consideration constitutional provisions, and also involve an examination as to whether *mandamus* is the appropriate

proceeding, it becomes necessary to state my views at some length.

The exact amount at issue in the present case is $43.64; but the question here sought to be raised is whether the taxpaying electors, not only of Warwick, with its assessed valuation, for purposes of taxation, of $22,185,764.00 (State Manual 1909), shall control, through their duly selected agent, the expenditure of moneys raised thereon for town purposes by taxation, but is State wide in its effect, and the decision of it determines whether the taxpaying electors of all the towns of the State, which, excluding all the cities, according to said State Manual, have an assessed valuation of $126,136,389.00, assessed at the average rate of $1.08 on each hundred dollars of such valuation, shall or shall not control the expenditure of the amount of $1,362,273.00 annually raised therein by taxation for town purposes, and exclusive of State taxes, on this vast amount.

The first ground of dissent is that the question here sought to be raised is not properly raised, and can be considered as in any way before the court only by a construction of the answer in the case which is contrary to the fact. The majority of the court have considered the admission of the answer in this friendly proceeding, "that there are funds in the hands of the respondent Herbert W. Barber, Town Treasurer of Warwick, which are properly applicable and are sufficient for the payment of said claim," to mean that moneys have been duly *appropriated* therefor by the taxpayers. The argument that there is no defence to the claim, and hence that *mandamus* is an appropriate remedy, also rests upon the same contention and construction. Since it is evident that there is a perfect defence, in that there has been no appropriation therefor, the construction given to the answer is not founded in fact. Upon request I have been furnished by both counsel in the case with a copy of the vote passed at the annual meeting of the taxpaying electors which is relied on to justify the contention that the money aforesaid was "applicable" for the purposes aforesaid, which vote is as follows:

"NOVEMBER 17, 1908.

"*Resolved*, That a tax of 75 cents on each one hundred dollars of the real property in this town of Warwick and personal property belonging to the inhabitants thereof and other ratable property therein, is this seventeenth day of November, A. D. 1908 levied to be assessed as of the thirty-first day of December, A. D. 1908, and payable on the first day of March A. D. 1909. All taxes not paid on or before the first day of April, A. D. 1909 shall bear interest at the rate of six per cent per annum from the said first day of March 1909 until paid. Said tax shall be for the purpose of paying said town's proportion of any state tax, for the repairs of town houses and other public buildings, the support and maintenance of the poor, for the laying out, making, repairing and mending of highways and bridges, for the improvement of any property belonging to the town, for the support of the public schools in the town, to pay town debt and all other necessary charges and expenses whatsoever arising in the town whether incidental or not to the above."

An examination of this vote discloses that there is here no specific appropriation of any nature, unless indeed the "town's proportion of any State tax" shall be so considered. And this question involving such vast sums of money is sought to be decided in a proceeding in which it is not properly raised and is clearly shown to be contrary to the fact. It would be sufficient to rest this dissent upon this impregnable ground, that in view of the fact there has never been any appropriation by the only body which the constitution makes competent to make an appropriation, the entire majority opinion is simply *obiter dictum*, and binding and conclusive on no one, not even upon those who advance it.

Nor is judicial precedent lacking in this behalf.

In *Inhabitants of Lexington* v. *Mulliken*, 7 Gray, 280, the syllabus is as follows: "A mandamus will not be granted on the petition of the selectmen of a town (especially if not expressly authorized by vote of the town) to compel the town treasurer to pay the amount of an order drawn by them upon him in payment of a debt of the town."

"Petition of the town of Lexington, by its selectmen, for a mandamus to the town treasurer to compel him to pay the amount of an order drawn by said selectmen upon him in favor of Charles A. Butters, for work done by him in altering a highway under an agreement made by him with the selectmen, under a vote of the town, and pursuant to an order of the county commissioners; which draft the treasurer had refused to pay, upon the ground that it exceeded the expense of such alteration as submitted to the town, at a legal meeting, by the selectmen, in an estimate of the necessary annual appropriation for current expenses, and accepted by the town; although, as the petition alleged, there was a sufficient sum in the treasurer's hands, belonging to the contingent funds of the town, to meet this order. The petition further alleged 'that said selectmen are the officers of said town, duly authorized to issue orders to pay over and account for the money belonging to said town, and that the same has uniformly heretofore been paid over in such sums, to such persons, and at such times, as the selectmen for the time being have ordered, by their orders in writing to said treasurer addressed.' "

And the court said: "We can see no ground on which this petition can be sustained.

"In the first place, upon the facts stated in the petition, we are unable to find any authority in the selectmen to make this application to the court. In the absence of any express vote or direction by the inhabitants, it does not come within the scope of the general powers and duties by law conferred on selectmen, to ask, in the name of the town or its inhabitants, for the interference of this court by a summary and extraordinary process to compel a town officer to perform a particular act.

"But we are entirely satisfied that the facts set forth in the petition, if true, do not make out a case which will justify the issuing of a writ of mandamus. If the debt for building the road is justly due from the town, the creditor has a plain, adequate and complete remedy at law, by the ordinary process, to enforce and collect his claim. The case does not require, and will not justify, any unusual or extraordinary remedy.

We do not mean to say that a case could not arise, which would authorize the court by a mandamus to compel a town officer to perform some specific legal duty incumbent on him.    But no such case is presented in the petition now before us."

The admission of the defendant in the case at bar, is "that there are funds in the hands of the respondent Herbert W. Barber, Town Treasurer of the town of Warwick, which are properly applicable and are sufficient for the payment of said claim."

The contention in *Lexington* v. *Mulliken, supra,* was a similar contention, to wit, that contingent funds or unappropriated moneys in the treasury were so applicable.    The word here is "applicable," and not "appropriated."    Whether, indeed, the funds aforesaid are or are not so "applicable," is a question of law and depends upon whether they were "appropriated" therefor, and is not dependent upon a construction of an ambiguous word in admission of counsel in a friendly proceeding. It was strongly urged at the argument that the course of action pursued by the town council of this town for several years past, in considering and treating any moneys in the treasury unappropriated by the taxpaying electors as to be disposed of at the discretion and pleasure of the council, without specific authority therefor, was the main reason for the action taken by the taxpayers in the appointment of the auditing committee in question.    No such unconstitutional practice of making appropriations by the town council not authorized by the taxpaying electors should or could for an instant receive the sanction of this court, and the opinion of the majority of the court is based upon the assumption that by the word "applicable," as above used, it is intended to admit that "appropriated" is intended, and that no less or other state of facts is presented on this record; that is to say, that the moneys which the treasurer proposes to use in payment of this claim have been duly appropriated therefor by the financial town meeting and are not unappropriated moneys in the treasury of the town.    That a disbursing officer is not justified in the payment of money not specifically appropriated for a given purpose is the law alike in

the nation and in the State as well as for the town.  Thus in *Reeside* v. *Walker*, 11 How. 272, 291, it is said: "No officer, however high, not even the President, much less a Secretary of the Treasury or Treasurer, is empowered to pay debts of the United States generally, when presented to them.  If, therefore, the petition in this case was allowed so far as to order the verdict against the United States to be entered on the books of the Treasury Department, the plaintiff would be as far from having a claim on the secretary or treasurer to pay it as now. The difficulty in the way is the want of any appropriation by Congress to pay this claim.  It is a well-known constitutional provision, that no money can be taken or drawn from the Treasury except under an appropriation by Congress.  See constitution, Art. 1, § 9 (1 Stat. at L. 15.)

"However much money may be in the treasury at any one time, not a dollar of it can be used in the payment of any thing not thus previously sanctioned.  Any other course would give to the fiscal officers a most dangerous discretion.

"Hence the petitioner should have presented her claim on the United States to Congress, and prayed for an appropriation to pay it.  If Congress after that make such an appropriation, the Treasury can, and doubtless will, discharge the claim without any mandamus.  But without such an appropriation it cannot and should not be paid by the Treasury, whether the claim is by a verdict or judgment, or without either, and no mandamus or other remedy lies against any officer of the Treasury Department, in a case situated like this, where no appropriation to pay it has been made.  The existence of this other and ordinary mode of redress, by resort to Congress, may be another reason against a mandamus, as that lies only when no other adequate remedy exists.  *Marbury* v. *Madison*, 1 Cranch. 137; *Kendall* v. *United States*, 12 Pet. 524."

The treasurer of the State is similarly restricted by the provisions of section 10, chapter 43, Gen. Laws of 1909, as follows: "He shall pay from the state treasury, money for the principal of and interest on the bonded debt, on the order of the state auditor, and for lawful orders on him of the governor or of the

state auditor, and for no other purpose, but no money shall be paid therefrom, unless the same shall have been appropriated to the purposes for which it is to be paid."

And the constitution of this State vests exclusive jurisdiction in the taxpaying electors over the expenditure of money in any town or city: "*Provided*, that no person shall at any time be allowed to vote in the election of the city council of any city, or upon any proposition to impose a tax or for the expenditure of money in any town or city, unless he shall within the year next preceding have paid a tax assessed upon his property therein, valued at least at one hundred and thirty-four dollars." Sec. 1, of art. VII, of amendments.

But even if the question sought to be here raised, and which is considered by the majority opinion was properly raised, I believe the determination so reached to be erroneous.

The petitioner seeks a writ of *mandamus* requiring the respondent, as town treasurer of the town of Warwick, to pay its claim against the town, which has been endorsed as approved by the "town auditor" and allowed by the town council.

The answer of the respondent is as follows:

"1.    The respondent Herbert W. Barber, Town Treasurer, admits that the H. P. Cornell Company, a corporation duly organized under the laws of the State of Rhode Island and located in the city and county of Providence in said State, has a claim against the town of Warwick, a municipal corporation duly created in said State, for goods sold and delivered according to the account annexed to the petition marked Exhibit A; that said goods were delivered to and used in the town asylum of said town of Warwick; that its bill therefor has been approved by Joseph H. Potter, town auditor, and allowed by the town council of said town of Warwick and ordered paid; that the respondent Herbert W. Barber of said Warwick was on the second day of November A. D. 1909, elected town treasurer of the said town of Warwick and has qualified according to law and has been town treasurer of said town since the third day of November 1909; that there are funds in the hands of the respondent Herbert W. Barber, Town Treasurer of the town of Warwick which are

properly applicable and are sufficient for the payment of said claim and that the respondent Herbert W. Barber Town Treasurer refused to pay the petitioner's bill, but respondent Herbert W. Barber Town Treasurer, denies the conclusions of law attempted to be drawn therefrom as to his duty to pay said bill.

"2. This respondent further answering says that on the third Tuesday of November, November 16, 1909, the annual town meeting of said town of Warwick was held within and for said town by the electors qualified to vote at such meeting in said town, and that at said meeting held as aforesaid the following votes, resolutions or ordinances were adopted:

" 'VOTED: That the town treasurer is hereby directed not to expend any money in payment of any bill or claim against the town unless the bill or claim shall first have been approved by an auditing committee to consist of the person named in this resolution who is hereby elected to serve as such Auditing Committee for one year from this date at a salary of $200. or, unless said claim or bill shall have been reduced to a judgment against the town. And the holder of any such bill or claim against the town shall be left to collect the same by due process of law whenever said Auditing Committee shall not have approved the same. In case of any vacancy in said committee by death, resignation or otherwise, the committee on Town Debt shall elect a person to fill such vacancy, and said committee on Town Debt are hereby authorized by this meeting to fill such vacancy. It is further

" 'VOTED: That all expenditures to be made from appropriations by this meeting voted shall be subject to the above conditions. The particular and especial duty of this Auditing Committee will be to guard the appropriations made by this meeting by preventing the expenditure of any of said appropriations for any purpose other than those specified by this meeting. He shall see to it that no appropriation is exceeded, that no part of any appropriation is diverted from the particular department for which the appropriation is made and that orders drawn upon the Town Treasurer are charged to the proper

appropriations. And he shall in every other way possible guard and protect the financial interests of the town.

" ' Said Auditing Committee is hereby authorized and directed to receive and to have possession of all such bills and claims after the same have been passed upon by the Town Council or School Committee, as the case may be, and the Town Auditor, and he shall return all such bills and claims to the Town Treasurer's office plainly marked with his approval or disapproval thereof, within five days of the receipt by him of such bills and claims. And it is further voted that Charles H. Allen be and he is hereby elected as such Auditing Committee.'

" 3. This respondent further answering says that he refuses to pay said bill because the same has not been approved by the auditing committee Charles H. Allen elected at said financial town meeting."

By stipulation it also appears as follows:

"That Charles H. Allen, of said Town of Warwick, the auditing committee elected at the town meeting held on the sixteenth day of November, A. D. 1909, has demanded of Herbert W. Barber, town treasurer, possession of the bill of H. P. Cornell Company, that he might approve or disapprove said bill within five days, in accordance with the vote of the town meeting."

The question thus presented is as to the authority and duty of the respondent to pay said claim without the audit of said "auditing committee."

The first legislation concerning the collection of claims against a town was enacted in 1659 (1 R. I. Col. Records, 424), and provided the simple method of arresting the town treasurer therefor without provision for a previous allowance or audit by the town council or the electors in town meeting assembled,— as follows: "It is ordered, that it shall be lawfull for any plaintiff against any towne in this Collony in any actionable case, to arrest the Towne Treasurer, who, (beinge arrested) shall consult with the Towne or Towne Counsell, whether to compound or stand out the suite; and he shall demaund of the towne a rate to repay his charges and disbursements; and if he cannot

atayne a rate, he shall, by virtue of this order, have power to
arrest to the Generall Court of Tryalls, any of the obstructions
of the sayd rate whome he please."

For nearly two hundred years the only method of allowance
of a claim against a town was by presentation in open town
meeting for the action of the electors thereon, without prior
presentation to or allowance by the town council.  At the
October session, 1677, of the General Assembly at Newport,.
there was enacted the following statute, viz.:  "An Act to
Enable private Persons to Recover their Debts due from any
Town, by Action against the Town Treasurer.  Be it enacted
by the General Assembly, and by the Authority of the same,.
That all Persons whatsoever, that shall have any Money due to
him or them, from any Town in this Colony, for any matter,
cause or thing whatsoever, shall take the following Method for
the obtaining of the same:   To wit, such person or persons shall
Present to the Town Meeting, a particular Account of such Debt
or Money due, and how, contracted; which being done, in Case
Just and due Satisfaction is not made him or them by the Town
Treasurer of such Town, within one Months time after such
account be given in as aforesaid, that then it shall be Lawful for
such Person or Persons, to Commence his or their Action against
such Town Treasurer, for the Recovery of the same, and upon
Judgment obtained for such Debt, or Money due, in Case the
Town Treasurer shall not have sufficient of the Town's Money
in his Hands, to satisfy and pay the Judgment obtained against
him, and the Charges expended in defending such Suit; that
then upon Application made by such Town Treasurer, to any one
Assistant, Justice of the Peace, or Warden of such Town, such
Assistant, Justice or Warden, shall grant forth a Warrant, to the
Town Sergeant of such Town, Requiring him to warn the Inhabi-
tants of such Town, to hold a Town Meeting, at such time and
place as shall be Appointed, for the speedy ordering and making
a Rate, to be collected for the Reimbursement of such Town
Treasurer; And in Case such Town upon due warning given
them, shall not take due, speedy, and effectual care to Reim-
burse, Pay, or satisfy such Town Treasurer such Moneys, costs,

and Charges by him Expended or Recovered against him; that then upon Information or Complaint thereof by him made, to the next General Assembly of this Colony, such Order shall be given therein, for the said Treasurer's Reimbursement, with Allowance for all incident Costs, Charges and trouble occasioned thereby; and such Town shall be Fined, at the Discretion of the said General Assembly." And this statute, with slight verbal changes, has been repeatedly re-enacted. See Digest, 1730, p. 24; Digest, 1745, p. 16; Digest, 1767, p. 262; Digest, 1798, p. 330; Digest, 1822, p. 257; Digest 1844, p. 299.

At the January session, 1854 (p. 1059), for the first time it was provided that in towns divided into voting-districts claims against towns might be presented either to the taxpaying electors in town meeting or to the town council, as follows: "Any person having any money due him from any town, or any demand against any town for any matter, cause or thing whatever, in order to obtain the same, may present a particular account of his debt or demand, and how contracted, to the town council of any town which is divided into election districts with the same effect as if presented to the electors when legally assembled in *town* meeting in conformity with the 13th section of the act of which this is in amendment."

It was not until the enactment of Gen. Statutes, 1872, cap. 31, § 11, which was re-enacted as § 12, cap. 34, Pub. Stat. 1882, with an extension of the time from thirty to forty days and which is now § 12, of cap. 46, Gen. Laws of 1909, that it was provided that claims might be presented to town councils in all cases, viz.: "Every person who shall have any money due to him from any town, or any claim or demand against any town for any matter, cause, or thing whatever, shall take the following method to obtain the same, to wit: Such person shall present to the town council of the town, and to the city council of the city, a particular account of his claim, debt, damages, or demand, and how incurred or contracted; which being done, in case just and due satisfaction is not made him by the town treasurer of such town within thirty (now forty) days after the presentment of such claim, debt, damages, or demand aforesaid,

such person may commence his action against the town treasurer for the recovery of the same." Of this statute it was said by this court in *Foster* v. *Angell*, 19 R. I. 285, 288 (1895): "The duty of auditing bills against a town is nowhere expressly devolved upon the town council thereof, although it is clearly implied from the provisions of Pub. Stat. R. I. cap. 34, § 12, yet we see no reason why any town may not rightfully require, in addition to their approval of said bills, a further approval by such an agent as it may designate for that purpose before the town treasurer shall pay the same." In that case a vote similar to the vote in the case at bar had been passed at the financial town meeting, and a similar question was presented.

It is to be noted, too, that the general powers still given to town councils by the provisions of § 4 of cap. 50, Gen. Laws of 1909, as follows: "The town council of each town shall have full power to manage the affairs and interests of such town, and to determine all such matters and things as shall by law come within their jurisdiction," have remained substantially the same in this respect as when they were granted in 1666 (Digest, 1719, p. 22), as follows: "Be it Enacted by the General Assembly, and by the Authority of the Same, That every Town within this Colony, shall once in every Year (on a Day to be by the Free-men of each Respective Town appointed,) chuse and elect such and so many Town Officers, as by the Laws of this Colony are or shall be required. And that on such a Day, by them appointed, they shall Annually chuse and elect, six good and sufficient Free-holders of each Town, for the constituting of a Town Council for each Town, who together with such Assistants, Justices of the Peace and Wardens, as shall Dwell and Inhabit in said Town, with the Governour and Deputy Governour, and each of them in such Town or Towns where they shall Inhabit or Reside, shall be and they hereby are constituted and appointed, a Town Council for such Town; And they or the Major part of such Town Council, shall be a Quorum, and have full Power to Manage the Affairs and Interests of said Town. And in all matters to Act, Do, Transact, and Determine, all and every thing or things, which shall fall within the Jurisdiction of the same."

Prior to the adoption of the present constitution in 1843, only freeholders and the eldest sons of freeholders could vote in any town meeting, Digest of 1822 (p. 90), viz.: "SEC. 2. And be it further enacted, That no person shall be permitted to vote or act as a freeman in any town-meeting in this State, but such only who is an inhabitant therein, and who at the time of such his voting and acting is really and truly possessed, in his own proper right, of a real estate within this State, to the full value of one hundred and thirty-four dollars, or which shall rent for seven dollars per annum, being an estate in fee simple, fee tail, or an estate in reversion which qualifies no other person to be a freeman, or at least an estate for a person's own life, or the eldest son of such a freeholder: *Provided, however,* that the yearly value of such life estate, shall exceed the amount of the rent reserved (if any) by the sum of seven dollars per annum."

The adoption of the present constitution, instead of extending participation in the power to impose a tax or to expend money, actually restricted it by divesting the eldest son of a freeholder of this power, and placing him in the same class as the other sons of his father. Const. art. II, § 1: "Every male citizen of the United States, of the age of twenty-one years, who has had his residence and home in this state for one year, and in the town or city in which he may claim a right to vote, six months next preceding the time of voting, and who is really and truly possessed in his own right of real estate in such town or city of the value of one hundred and thirty four dollars over and above all incumbrances, or which shall rent for seven dollars per annum over and above any rent reserved or the interest of any incumbrances thereon, being an estate in fee-simple, fee-tail, for the life of any person, or an estate in reverversion or remainder, which qualifies no other person to vote, the conveyance of which estate, if by deed, shall have been recorded at least ninety days, shall thereafter have a right to vote in the election of all civil officers and on all questions in all legal town or ward meetings so long as he continues so qualified." Also, § 1 of art. VII of amendments, quoted *supra.*

By the adoption of the present constitution it became necessary for the first time to hold a financial town meeting for the transaction of such business as only taxpaying electors could transact and also a general town meeting for the election of members of the town council and other town officers in the election of whom all the electors, whether taxpayers or not, were entitled to participate. In Pub. Laws, 1844, enacted immediately upon the adoption of the constitution, provision is thus made for the two meetings (p. 297): "SEC. 8. The electors of each and every town who are entitled to vote on any proposition to impose a tax shall have power and authority when legally convened, to make such acts and laws in their towns for the raising such sums of money only as shall be by them thought needful for the defraying the necessary incidental charges and expenses thereof, or paying the town debts, by a tax on real or personal estate or both; but no poll tax shall be levied or collected for any purpose whatever; and any town may include the said town's proportion of any state tax which may be assessed, in the assessment of such town tax, and pay the same out of the town treasury, provided the same shall be voted at a legal meeting of the said electors of such town." (p. 301) "SEC. 1. The electors in each town shall annually, on their town election days, choose and elect so many town officers as by the laws of this State are or shall be required; that is to say, a moderator to preside in all the meetings of the town, and a town clerk, a town treasurer, a town council, to consist of not less than three nor more than seven members," and numerous other town officers.

It is urged by the petitioners, first, that the citation from *Foster* v. *Angell, supra,* is *obiter dictum* and is not a correct exposition of the law; and, secondly, that even if the law as it then stood were correctly interpreted, by reason of the enactment of cap. 402, of the Pub. Laws, passed April 30, 1909, it is no longer a correct construction of the law.

As to the first contention it is to be observed that the General Assembly has by special act, passed on April 15, 1909, cap. 504, Pub. Laws, enumerated the following powers of the taxpaying

electors of Warwick: "The electors of the town of Warwick qualified to vote on any proposition to impose a tax or for the expenditure of money in said town shall annually on the third Tuesday in November, assemble in town meeting at the town hall in voting-district number one, at two o'clock in the afternoon, for the purpose of hearing official reports, ordering a tax or taxes, making appropriations, and *transacting any other business appertaining to the financial affairs of said town.*"

Powers substantially the same as contained in Pub. Laws, cap. 504, *supra,* relative to Warwick, have been specially enumerated in many other acts relating to other towns, as follows: Cranston, cap. 620, Jan. Session, 1887, also cap. 481, Jan. Session, 1909; Scituate, cap. 647, Jan. Session, 1887; Hopkinton, cap. 709, Jan. Session, 1888, and cap. 885, Jan. Session, 1890; Coventry, cap. 803, Jan. Session, 1889, and cap. 882, Jan. Session, 1890; North Kingstown, cap. 1438, Jan. Session, 1895, and cap. 734, Jan. Session, 1900; Charlestown, cap. 1437, Jan. Session, 1895, and cap. 733, Jan. Session, 1900, and cap. 1024, Jan. Session, 1902; Cranston, cap. 383, Jan. Session, 1896; Richmond, cap. 394, Jan. Session, 1896; Coventry, cap. 767, Jan. Session, 1900; Burrillville, cap. 880, Jan. Session, 1901, and cap. 1184, Jan. Session, 1904, and cap. 1492, Jan. Session, 1907; North Providence, cap. 1033, Jan. Session, 1902; Warwick, cap. 1035, Jan. Session, 1902; Tiverton, cap. 1288, Jan. Session, 1905.

It is not necessary, indeed, to hold that the General Assembly has in these cases conferred special powers which it has withheld in other cases, although if that view were to prevail it does not avail the petitioner in the case at bar. These special acts are, however, worthy of consideration as showing at least repeated legislative recognition of the powers inherent in financial town meetings in these respects.

And an examination of the legislation in this respect shows that even greater powers have been, from time to time, enumerated by the General Assembly as possessed by the taxpaying electors of other towns. Thus by the provisions of cap. 903, Pub. Laws, passed at the January session, 1901, the electors of

Westerly, qualified to vote upon any proposition to impose a tax or for the expenditure of money in said town are authorized to hold a financial town meeting annually "for the purpose of hearing reports of officers, ordering a tax, making appropriations, and transacting *any other business relating to the town* except the election of officers provided for in this act."

By cap. 483, Pub. Laws, passed at the January session, 1885, it is provided in South Kingstown as follows: "At no town meeting held in said town for the election of national, state, or town officers, shall any business be transacted other than such as pertains to said election."

Cap. 1412, Pub. Laws, passed at the January session, 1895, contains the following provision as to North Providence, viz.: "Provided, that nothing herein contained shall be so construed as to prevent the electors of said town at the annual financial town meeting from directing said commissioner as to the manner and method of making contracts for the grading and repairing of highways in said town. The salary of the commissioner of highways shall be fixed at the financial town meeting of said town."

Chapter 402, Pub. Laws, *supra*, is as follows: "SECTION 1. Chapter 40 of the General Laws, entitled 'Of the town council,' is hereby amended by adding thereto the following section:

" 'SEC. 42. In addition to the other officers which the town council of any town is now authorized to elect, the town council of any town may elect one or more town auditors, prescribe their duties by ordinance, and fix their compensation.'

"SEC. 2. This act shall take effect from and after its passage, and all acts and parts of acts, and all town ordinances and by-laws, inconsistent herewith are hereby repealed."

The ordinance passed by the town council of Warwick, defining the duties of the "town auditor," Mr. Joseph H. Potter, is as follows: "SEC. 3. It shall be the duty of said Auditor or Auditors so appointed, to examine all claims, debts, dues, and demands presented to said town for payment for any and all work or services rendered or performed for and in behalf of the town, or for any and all stock and materials furnished to

said town for its use upon any of its highways, bridges, public buildings or for any department of said town: and to pass upon said claim and report his findings to the town council."

It is contended that the passage of this act, repealing all town ordinances and by-laws inconsistent with it, made inoperative the vote of the financial town meeting held on November 16, 1909. The act is, however, not mandatory, but permissive; and even after the election of a town auditor thereunder, there is no conflict of authority until an ordinance has been passed which vests the powers here questioned in the town auditor so chosen. A moment's observation suffices to show that the only duty of the town auditor is to report upon claims before they are presented to the town council, although the council may still allow claims which he rejects or disallow claims which he approves; and it is not contended that there is any town ordinance or by-law which prohibits the town council from electing such an officer, and is therefore repealed by the statute. It is entirely proper that the town council should have the report of such a town auditor before claims are presented to it just as it would be entirely proper if every claim against the town were referred for investigation to one member of the town council as a committee to report thereon. But such legislation in no wise affects the questions at issue in the case at bar.

And finally, by sec. 11 of cap. 30 of the Revised Statutes of 1857, still in force as sec. 11 of cap. 46, Gen. Laws, 1909, it was provided: "Towns may and shall elect all such town officers as are, or may be, by law required, and may appoint such other officers as by law empowered, and *such special agents for the transaction of any town business not by law required to be performed by any officer known to the law,* as they may deem expedient." Such a provision seems to be especially designed to cover a case like the case at bar.

The respondent contends that cap. 402, Pub. Laws, *supra,* is unconstitutional in that it permits the compensation of such town auditors to be fixed by the town council. Whether a town council can, without an appropriation by the taxpaying electors therefor, fix and determine the compensation of such

·or any other offices is not presented on this record and may be left to be determined whenever such a case shall be presented.

Thus from the earliest beginnings of this colony it is seen that claims against towns were first established by action against the town treasurer, then for nearly two hundred years by the action of the electors assembled in town meeting, and then were required to be presented to the town council, prior to suit, which presentation was held in *Foster* v. *Angell, supra,* to be an implied power to audit the same, but that at no time has this power been expressly granted to town councils, much less granted to town councils exclusively, even when town councils were elected by real estate owners only and were themselves real estate owners; and moreover, that ever since the statute authorized the presentation of claims to town councils there has been express authority given by statute to towns to appoint "special agents for the transaction of any town business not by law required to be performed by any officer known to the law."

It is obvious that those matters pertaining to the expenditure of money which are beyond the jurisdiction of the town meeting are not subject to revision by it or by its agent selected thereat. Such are cases where the town treasurer is required by the law of the State to make certain payments, as, for example, the town's proportion of the State tax, if the same shall be assumed by the town; the State's proportion of the money received from licenses; and all other cases where the disposition of a definite fund is regulated and controlled by statute and which are consequently not to be altered in amount or changed in disposition by popular vote.

But it is equally clear that the exclusive power of making appropriations and of determining the manner of their expenditure, vested by the constitution in those electors only who are qualified to vote upon the imposition of a tax or upon the expenditure of money, by necessary implication includes the power to select agents of their own choice, to the end that those who contribute for public purposes may be assured that their contributions are devoted to the exact purposes for which they are designated.

Upon a full consideration of the grounds of the decision heretofore rendered in *Foster* v. *Angell, supra,* I am convinced of its correctness in this respect and that it has not been affected in the case at bar by the passage of cap. 402, Pub. Laws, *supra.* It follows that it is not the duty of the respondent treasurer to pay the petitioner's claim until audited by the auditing committee appointed at the financial town meeting held November 16, 1909. The petitioner has taken the statutory step prerequisite to maintaining its action therefor against the town, by presenting the same to the town council, and inasmuch as forty days have now elapsed without payment thereof since presentation, it is entitled to sue at once therefor. And this would be its only remedy if the town council had rejected its claim.

Moreover, section 1 of article VII of amendments to the constitution has vested in the taxpaying electors alone the right to vote "upon any proposition to impose a tax or for the expenditure of money in any town or city" and of this constitutional right they can not be deprived by any act of the General Assembly.

No law can be enacted by the General Assembly which shall in the slightest degree impair this plenary and exclusive jurisdiction or diminish in any respect its full constitutional vigor and potency, including all the powers necessarily implied for its effective exercise. Neither can any law be so interpreted by this court, whether in cases of doubtful construction or even in case of apparently conflicting provisions. To the powers thus granted by the constitution to the action of the taxpaying electors, other powers not inconsistent with other constitutional provisions may be added by the legislature, to the derogation, it may be, of powers now exercised by other agencies of government but never to the derogation of any inherent right of a town council. And this for the simple reason that the latter body has by the constitution no such inherent rights. Though known to our laws and vested with substantially the same statutory powers concerning the care of the general interests of the town for nearly two hundred years prior to the adop-

tion of the present constitution, not only is there no constitutional guaranty of such powers to a town council but the constitution does not even recognize such a body by so much as naming it. It is the mere creation of the legislature, exists only at its sufferance, and may be stripped of all its powers or abolished at its pleasure. It may be deprived of all power, but may not hold all power. The financial town meeting can never be deprived by the legislature of any portion of its absolute and exclusive control of the expenditure of money as provided in the constitution.

As if in recognition of the existence of such power in the taxpaying electors, the General Assembly, by the passage of Pub. Laws, cap. 504, on April 15, 1909, specifically enacted and declared that the financial town meeting in Warwick should possess in addition to certain other powers the power of "transacting any other business appertaining to the financial affairs of said town."

It seems to have been assumed by the petitioner that it is the duty of the town treasurer to pay a claim allowed by the town council. There is no statute imposing such a duty, and hence the petitioner is forced to resort to a second implication to support his contention. In point of fact, the duty of the town treasurer to pay any money whatever, except when defined by the law of the State, depends only upon the vote of the taxpaying electors and not in any wise upon the order of the town council. He may pay without their approval, or even after their disallowance, and their order is no protection to him or to his bondsmen. For example, it can not be questioned that the petitioner here might have presented his claim to the financial town meeting and if by that body it had been allowed and ordered paid, the town treasurer and his bondsmen would be entirely justified in the payment of the same without the allowance or order of the town council, and even if the council had disallowed the claim and instructed the treasurer not to pay it. Or again, if the financial town meeting had made no appropriation therefor, or the appropriation therefor had been exhausted, it would be the clear duty of the town treasurer to refuse to pay

the same upon the order of the town council, and a clear breach of his duty and of his bond knowingly to comply with such an order. The most that the petitioner can claim, even in the absence of such a vote as is here questioned, is, that within the limits and the purposes specified by the financial town meeting the town council may indicate to the town treasurer the items and the amounts which in their judgment are proper to be paid. But that is the limit of their jurisdiction, and it is evident that *mandamus* will not lie to require the council to do even this, inasmuch as no authority is thereby conferred, nor is any duty thereby imposed. Under the statutes of this State the town treasurer, indeed, is not subject in this respect to the action of the town council. He is not their appointee, but is elected by the people (cap. 49, § 1, Gen. Laws, 1909), and although the town council may elect many town officers, if the people fail to elect them at the annual town meeting, it is specially provided by cap. 49, § 13, Gen. Laws, 1909, that a town council can not elect a town treasurer. He derives his commission from the electors and not from the town council, and is not removable from office by the latter body even for cause, inasmuch as his tenure of office is defined by sec. 19, cap. 49, Gen. Laws, 1909, as follows: "All town officers shall hold their offices until the next annual election of town officers, and thereafter until their successors shall be lawfully qualified to act; unless where it is expressly provided to the contrary."

It is to be observed that the legislature of this State has not granted to town councils or imposed upon town treasurers the powers and duties in respect of these matters which the legislatures of other States have conferred and imposed on similar officers. An example of this distinction is seen in the State of Vermont. Pub. St. Vermont (1906) confers upon the selectmen of towns substantially the same powers over the general affairs of towns as are conferred upon town councils in this State, as follows: "SEC. 3467. General powers and duties. The selectmen shall have the general supervision of the affairs of the town, and shall cause duties required of towns, and not committed to the care of any particular officer, to be duly performed

and executed." But apparently not considering this general grant of power sufficient to authorize the allowance of accounts against the town the legislature has further provided as follows: "SEC. 3471. Allowance of claims; orders. Said selectmen shall *audit* and in their discretion *allow* the claims against the town for money paid or services performed for the town, and draw orders on the treasurer for the amount." And having thus conferred the power to allow claims against the town, the legislature of that State has made it the statutory duty of the town treasurer to pay the orders of the selectmen therefor. "SEC. 3495. Orders. Said treasurer shall pay orders drawn on him by the selectmen or overseer of the poor; and if he does not pay such order on demand, the holder thereof may recover the amount from the town, with interest from the time of such demand."

In *Collinge* v. *Crepeau*, 29 R. I. 340, it was determined by this court that authority to enact building regulations was not conferred upon the town councils by the provisions of Gen. Laws, 1896, cap. 40, § 21 (now § 22, cap. 50, Gen. Laws, 1909), as follows (p. 341): "It is conceded that the town of Lincoln has no special statutory authority to enact building regulations, and that the validity of the ordinance must depend upon the concluding paragraph of section 21 of Chapter 40, General Laws, which is as follows: 'and, generally, all other ordinances, regu-. lations and by-laws for the well-ordering, managing and directing of the prudential affairs and police of their respective towns not repugnant to the constitution and laws of this State, or of the United States.'"

A similar provision as to the powers conferred by the statute of Vermont giving the selectmen supervision of the prudential affairs of towns was thus held to be greatly enlarged by the grant of powers to audit and settle claims against towns, *supra*, in *Dix* v. *Dummerston*, 19 Vt. 262, 266: "In the case of *Angel* v. *Pownal*, 3 Vt. 461, and also in *Yuran* v. *Randolph*, 6 Vt. 369, it was held, that the selectmen could not, without a vote of the town, release the interest of a witness in a suit, so as to render him competent to testify; and in *Middlebury* v..

*Rood,* 7 Vt. 125, it was held, that the selectmen, as such, had not
authority to receive money collected on an execution in favor
of the town and discharge the same.   These decisions were, how-
ever, made under the provisions of the old statute, which merely
authorized the selectmen to ' superintend the prudential affairs
of the town.'   Under a statute in Connecticut, somewhat similar
it appears to have been held, that the selectmen of a town had
no authority to submit a claim against the town to arbitration;
and it would be difficult, under such a general power, to find
authority for making such a submission.

"The Revised Statutes of this State have, however, greatly
extended the powers of selectmen.   By section 47 of chapter 13
they are empowered and directed ' to audit, and, in their dis-
cretion, to allow, the claim of any person against the town
*for money paid,* or *services performed,* for the town, and to draw
orders on the treasurer for the sums so allowed."

This is made more evident upon the examination of the
decision in *Middlebury et al.* v. *Rood,* 7 Vt. 125, where the court
construed the powers thus conferred as follows (p. 130): "But
it is insisted that this power is conferred by the words, ' to
superintend the prudential affairs of the town.'   This general
purpose of their appointment is contained in the very clause
directing them to be appointed, and afterwards particular acts
and duties are enjoined.   Perhaps these specified duties may be
regarded as what is meant by ' prudential affairs.'   If not, the
broadest construction would seem to comprehend no more than
all those undefined acts and doings that are necessary and con-
venient to have done in the management of the affairs of the
town, which it is not made the duty of other officers to do—every
thing that is no one's business in particular to do—that is, to do
the chores of the town."

If in fact warranted by the law, and the vote of the taxpaying
electors, the treasurer is doing his plain duty in paying a claim
against the town, even if it is disallowed by the town council,
and if not so warranted by the law or by the vote of the tax-
paying electors, he may still refuse to pay it and he is not pro-
tected by the allowance of the town council and he and his

bondsmen are liable as for a breach of his duty upon his official bond.

The appointment of the auditing committee in the case at bar, therefore, is merely the selection of an agent by the tax-paying electors, to whom they delegate the powers of the whole body, to allow or disallow in advance of their payment those claims whose validity and the propriety of their payment must always be determined by their conformity to the same standard, viz., the vote of the taxpaying electors and not the allowance or disallowance of them by the town council. And this is so whether the propriety of their payment is brought in question by injunction proceedings, before payment, or by suit upon the bond of the town treasurer thereafter.

Accordingly, in *State* v. *Snodgrass*, 98 Ind. 546, 551, it was held: "A fiscal officer can not, by mandate, be required to pay a claim where any duty is devolved upon him except the mere ministerial act of making payment. The validity of the claim and the amount due must have been definitely ascertained by some competent officer or tribunal, whose decision, while unappealed from or unreversed, is final and conclusive, before its payment can be enforced by mandate. If the officer, whose duty it is to make the payment, must himself, at his own risk, inquire into the validity and the amount of the claim, he may not be compelled by mandate to make payment. He may, for his own protection in such case, require an adjudication of the claim before paying it. High. Ex. Legal Rem., sections 100–117."

A further objection to the granting of the writ is that the petitioner has a plain and adequate remedy at law by his action against the town by the express provisions of the statute.

It is therein provided that in the event of satisfaction not being made within forty days, not that *mandamus* shall issue, but that suit may be brought and the express provision for the exact contingency presented in the case at bar may well be held to be even an exclusion of other remedies.

The petitioner relies on *Portland Stone Ware Co.* v. *Taylor*, 17 R. I. 33, in support of his contention that *mandamus*

will lie in such a case as the one at bar. The facts are widely different. It was there stated by Stiness, J., p. 35, as follows: "We come, then, to the question whether the creditor can maintain his petition. It appears that the fund, out of which payment is sought, is a special fund, on special deposit for a special purpose. The expenditure of this fund is expressly given to the district council. So far as the treasurer is concerned, he has simply the ministerial duty to pay it out under the direction of the council. In cases of this kind, mandamus will lie." There the payment sought was to be made from a special bond issue, the proceeds of which were on special deposit, and the remedy by *mandamus* was held to be an appropriate one. Whether, indeed, judgment could have been rendered against the district funds generally in an action at law for the payment of work specially authorized by the taxpayers to be paid out of this special fund, and for which no other authority had been given and no appropriation made, was a point apparently not raised or considered by the court and may well be questioned, although the opinion does refer to the possibility of an action at law in which the judgment against the district "might be larger in amount than the sum authorized whereas in the present proceedings there can be no order beyond the amount of the funds."

Even if it be conceded that under the circumstances shown in *Portland Stone Ware Co.* v. *Taylor, supra,* the writ was properly issued, it by no means follows that it should issue in cases which are different in their facts and in the law applicable to them. But without apparently distinguishing in this respect, in *Foster* v. *Angell,* 19 R. I. 287, the case above referred to is cited in support of the proposition that the writ may issue upon the auditing of a claim by a town council, to which the powers are not given which were specifically given to the district council by a special act of the General Assembly in *Portland Stone Ware Co.* v. *Taylor, supra;* neither have they the same authority which is specifically given by law to the State auditor in *In Re the State House Commission and State Auditor,* 19 R. I. 393, which is also cited thereto. Indeed, in the latter

case it is obvious there is no other remedy by action at law since an action can not be maintained against the State.   In *Times Publishing Co.* v. *White*, 23 R. I. 334, the court again cites *Portland Stone Ware Co.* v. *Taylor*, *supra*, to a similar purpose, but it even there appeared that it was made the specific statutory duty of the city treasurer to pay the claims in question upon the order of the school committee.

We are thus led to an examination of the cases upon the authority of which *Portland Stone Ware Co.* v. *Taylor*, was decided in order to determine whether they are authority for the extension of the doctrine to the case at bar in which there is no legal requirement on the part of the treasurer to pay and in which, moreover, a specific and adequate remedy is provided for the very case presented by the terms of the statute.   Those cases are the following, and not one of them presents the conditions presented in the case at bar.

Thus, in *County of Pike* v. *State*, 11 Ill. at p. 210, the court said: "The course adopted was the only way in which payment could be enforced."

In *Insane Hospital* v. *Higgins*, 15 Ill. 185, the court said that "dues payable out of a particular fund, as the medical superintendent's salary in this case, do not arise on contract, and will not authorize an action of debt or assumpsit, which would entitle the plaintiff below to satisfaction out of the general property of the institution," citing cases.   "We are of opinion that the action will not lie."

In *State* v. *Treasurer of Callaway Co.*, 43 Mo. 230, the statute there in force provided that the county treasurer should disburse all moneys "on warrants drawn by order of the county court."   The question at issue was thus stated: "The original account was allowed, the warrant was issued; and at a subsequent term, without notice, the county court makes an order on the treasurer to pay only a part of the warrant.   We know of no authority for such a proceeding."   And the court adds: "But where the allowance by the court has been regularly had upon a claim they are required to pass upon, and the warrant has been drawn and presented, and the court

adjourned for the term, the treasurer has but one duty; and no subsequent court, not of superior jurisdiction, can excuse him from the performance of that duty."

In *Apgar* v. *Trustees of School District No. 4.*, 34 N. J. L. 308, it appears by the opinion that the plaintiff had no other remedy.

*Harvey* v. *Philbrick*, 49 N. J. L. 374, was tried upon an agreed statement of facts which does not show that an action at law would lie, nor was that defence raised. The only defence made was that the commissioners and treasurer were *de facto* officers only and not officers *de jure*. And the court observes, too, that in that case "the commissioners contracted the debt and they had authority to audit the bill and direct its payment by the treasurer out of the funds of the borough in his hands. The treasurer had no option. His duty was to pay the bill upon presentation to him of the order by the relator."

In *Lindabury* v. *Freeholders of Ocean*, 47 N. J. L. pp. 423, 428, the court observes: "The whole dispute seems to be whether the amount of the relator's compensation is in the discretion of the board, or to be determined by the official certificate of the court. . . The statute now in question contains no words implying a discretion in the board of freeholders. The board is not called upon to audit and allow accounts presented under this act. The act requires the expenses to be verified—that is, shown to be reasonable and necessary—not to the board of freeholders, but to the presiding judge, and the approval of the expenses devolves upon him; and upon approval under his hand the act declares that the expenses shall be paid by the board of freeholders. . . . His certificate is made a final determination of the obligation to pay and of the sums to be paid, as much as if it had been expressly fixed by statute. . . We think that the judge's certificate of approval of these expenses is conclusive, and that on the presentation thereof to the board of freeholders the same should have been paid."

In *Knight* v. *Freeholders of Ocean*, 48 N. J. L. 74, the court says: "We are therefore of the opinion that by this statute, authority is given to the judge of the Circuit Court to fix the per diem allowance and also the rate per folio for copies, within

the statutory limitations, to be paid to the stenographer, and that his certificate thereof · is conclusive. . . As to all these matters the certificate of the judge is conclusive, and it is the duty of the board of freeholders to pay the charges as certified. *Lindabury* v. *Freeholders of Ocean, supra.*"

In *People* v. *Board of Auditors of Wayne Co.*, 13 Mich. 234, the right invoked by *mandamus* was in virtue of a constitutional requirement as follows: "The board of supervisors, or, in the county of Wayne, the board of county auditors, shall have the exclusive power to prescribe and fix the compensation for all services rendered for, and to adjust all claims against, these respective counties, and the sum so fixed or defined shall be subject to no appeal."

In *People* v. *Edmonds*, 19 Barb. 468, the court states that "The salaries of police justices are (by an act of the legislature) to be established by the board of supervisors. The city chamberlain is, ex-officio, county treasurer, and it is his duty, and not that of the comptroller of the city, to pay all county charges legally audited and allowed, or directed to be paid, by the board of supervisors." The observation by the court as to the cases when the writ will issue is dictum, inasmuch as the writ was refused because the board of supervisors had no authority to pass the resolution for extra compensation in question.

In *Commonwealth* v. *Johnson and Felton*, 2 Binn. p. 278, it is said by Tilghman, C. J.: "The point which required most consideration, was, whether the case was of such a nature as called for a *mandamus;* and we think it is, because the supervisors are public officers, directed by the act of assembly to pay such orders as are legally drawn by the justices, and because the surveyors have no other specific remedy."

In *State* v. *Haben, Treas.*, 22 Wis. 660, the writ was denied. The court thus states the case (p. 667): "Are the relators the proper parties to apply for this writ? We think not. The object of the writ is to compel the respondent, who is the treasurer of the city, to pay two orders for the sum of $100 each, drawn by the relators, the board of education of the city, in favor of one Alger, a contractor on the high school building, and

delivered to him, which orders, now in the possession of and belonging to Mr. Algcr have been presented by him to the defendant, and payment demanded and refused. These,with the further averment that the defendant has money in his hands with which he ought to have paid the orders constitute all the material allegations of the writ."

That *Portland Stone Ware Co.* v. *Taylor* is not applicable to the case at bar, but was intended to apply to the special facts in that case is evident from the language of Stiness, J., in concluding the opinion of the court (p. 36): "In the *People* v. *Clark Co.*, 50 Ill. 213, cited by the defendant, the court makes the distinction, in refusing mandamus, that the order in that case was drawn upon the county generally, and not upon a special fund. In this respect, it was not like the case before us."

A reference to the opinion by Breese, C. J., in *The People* v. *Clark County*, *supra*, discloses the following—"This order is not drawn upon the 'bounty tax fund' created by the act of the General Assembly of February 7, 1865, but upon the general revenue fund, and must be treated in the same way as such special orders have always been treated. It has no preference over any other county order drawn upon that fund. It has never been understood, and it never should be, that the holder of such an order had the right, on refusal of payment, to apply for a mandamus to compel payment. Holders of such paper have no claims to this extraordinary proceeding to enforce its payment. On its face, it is no more than an acknowledgment that the sum specified in it is due by the county to the holder, and to be paid out of its ordinary county revenue, and it is accepted as such. Unfortunate, indeed, would be the condition of counties, if every holder of its orders, no matter how small the sum might be, could call for this high prerogative writ to compel payment of them. There would be no end to applications for them, could this be sanctioned.

"As a holder of this order, drawn on the general fund, the relator is in no different or better position than those countless multitudes are, in every county, having such paper. If not

paid when a demand is made at the treasury, a judgment can be had against the county. The remedy is complete at law to that extent, and where the ordinary proceedings at law afford a remedy, this writ is never awarded. Certainly, this is not a case to justify it.

"The judgment quashing the writ is affirmed."

It will be observed that in each of these cases there was either no other remedy or that the duty was specifically imposed by law upon the respondent; and in these respects they differ from the case at bar.

The latest case in this court in which *Portland Stone Ware Co.* v. *Taylor*, was relied on for the issuance of *mandamus* was the recent case of *Putnam Foundry & Machine Co.* v. *Town Council*, 28 R. I. 422 (1907), in which the relator sought to compel the respondent "to cause to be executed a contract in writing for the reconstruction of the heating apparatus of the town building of said town of Barrington." In denying the writ, Mr. Justice Johnson comments upon and commends the application of *Portland Stone Ware Co.* v. *Taylor*, to the facts and the law presented in that case, and then proceeds, as follows: "To warrant the issuance of a writ of mandamus, the petitioner must show first a legal right to have the act done which is sought by the writ; and second, it must appear that the act which is to be enforced by the mandate is that which it is the plain legal duty of the respondent to perform, without discretion either to do or refuse; and third, that the writ will be availing as a remedy, and that the petitioner has no other plain, speedy, and adequate remedy. *Sweet* v. *Conley*, 20 R. I. 381."

I am of the opinion that the rule thus laid down is correct, and should hereafter be followed. While it is not necessarily opposed to *Portland Stone Ware Co.* v. *Taylor*, it unquestionably states the correct rule, and the previous decisions of the court above cited, which have sought to extend the scope of the decision in *Portland Stone Ware Co.* v. *Taylor*, should not longer, if they have heretofore, be considered as justified by it. In thus deciding no property rights are changed and no vested interests are impaired, but it is merely said that this remedy is

not available except upon certain conditions, one of which is that there is no other "plain, speedy, and adequate remedy;" and thus the rights of all relators are fully preserved and protected.

The overwhelming weight of authority in other jurisdictions clearly supports the doctrine affirmed in *Putnam Foun'y & Machine Co.* v. *Town Council of Barrington, supra,* that the duty to be performed must be clearly imposed by law and that the petitioner has no other adequate remedy. In the case at bar there is no such duty imposed by law, and the petitioner has a plain and adequate remedy at law specifically provided for the very case here presented. Thus—

In *Ex parte Cutting,* 94 U. S. 14, 20, it is said by Waite, C. J., that "The office of a *mandamus* is to compel the performance of a plain and positive duty. · It is issued upon the application of one who has a clear right to demand such a performance and who has no other adequate remedy."

In *State ex rel. Conant* v. *Fuller,* 18 So. Car. 246, 250, it is said: "It is well settled that the writ of *mandamus* can only issue to compel the performance of some act obligatory by law on the officer to whom it goes. He must have the ability to comply, and must be also under a clear duty in respect thereof. A writ of *mandamus* is the highest judicial writ known to the constitution and laws, and only issues when there is a specific legal right to be enforced, or where there is a positive duty to be performed, and where there is no other specific remedy. When the legal right is doubtful, or when the performance of the duty rests in discretion, or where there is other adequate remedy, the writ cannot rightfully issue. *Hayne* v. *Hood,* 1 S. C. 16; *Ex parte Mackey,* 15 S. C. 323."

In *Hugg* v. *Ivins,* 59 New Jersey Law, 139, the Supreme Court of New Jersey, after finding that the claim allowed and ordered paid by the board of chosen freeholders was allowed by a board not legally authorized to do so, said (p. 142): "But, conceding that the board was legally organized, and conceding that the services had been performed in defending the title of the members to their positions, still mandamus would not be the proper

remedy to enforce the claim, although the resolution had been adopted ordering the payment. *Mandamus* is not the proper remedy, in the absence of statutory provision, to collect a debt against a municipal corporation or its officers until the claim therefor has been adjudicated upon, and has been merged into a judgment at law. The doubts in relation to this alleged indebtedness should have been solved by an action at law.

"It is now well established that a writ of *mandamus* will only be directed to enforce a clear legal right. If there exists a fair doubt respecting the right of the public or of the relator to *mandamus,* some other form of remedy must be sought. The right will be considered, but the right, to be enforced, must be clearly one to which the relator is entitled, and if there be another specific legal remedy it must be invoked. Dill. Mun. Corp. 821–830. *State* v. *Warren, &c.,* 3 Vroom, 439; *Nicholson Pavement Co.* v. *Mayor of Newark,* 6 Id. 396; *Hugg* v. *Camden,* 10 Id. 620, 624.

"The application is denied, with costs."

In *Case* v. *City of Sullivan,* 222 Ill. 56, 59, the court said: "The law is well settled that before a party will be coerced by a writ of *mandamus* to perform an act it must clearly appear from the petition that it is his clear legal duty to perform such act, and if a clear legal duty to perform the act sought to be coerced does not rest upon the party sought to be coerced, the court will not grant the writ."

In *Puckett* v. *White,* 22 Tex. 559, 563, it is held that "There can be no better settled principle, by the oft repeated decisions of this court, than that a mandamus will not lie to compel a public officer to perform an act, which is not a duty clearly prescribed and enjoined by law."

In *State* v. *Napier,* 7 Ia. 425, the court uses the following language (p. 433): "As before suggested, the whole question must be brought to the test fixed by the statute. Is it the duty of the county judge—a duty resulting from his office, and specially enjoined upon him by law—to submit to a vote of the people the question of the adoption, or rejection of this contract, upon the petition of any number of the citizens of the

c

county? We do not think it is. The law has not imposed any such duty upon him. The writ of *mandamus* does not lie to compel him to perform an act, which the law does not specially enjoin upon him as a duty resulting from his office. Wherefore, we think, the writ was properly refused, and the judgment of the district court should be affirmed."

In *State* v. *Icke,* 136 Wis. 583, the majority of the court held as follows (p. 586): "Mandamus is an extraordinary remedy and one of the most absolute conditions to it is that the duty sought to be compelled shall be a clear and absolute one imposed by law," citing cases. The other justices concurred in the result on other grounds.

In *Colley* v. *Webster,* 59 Conn. 361, it is said (p. 364): "By the terms of the charter, and through the action of the court thereunder, the state has placed in the city treasury certain money for the plaintiff. We do not at present see why there is not an implied promise to pay the same. And furthermore, unless there is something in the case not now brought to our notice, the city or its officers cannot avoid liability by simply refusing to approve the bill. Neither do we wish to be understood as sanctioning the defendant's claim that it is his plain duty not to pay the plaintiff's claim. On the contrary, we think the charter clearly authorizes such payment. We only say that the charter imposes no duty that the court can enforce by a mandamus; and that the plaintiff has adequate remedy at law."

In *People* v. *Spruance,* 8 Colo. 307, 319, it is said by Beck, C. J., "The writ of mandamus is said to be a high prerogative writ which should never issue unless the party applying for it shall show a clear legal right to have the thing sought by it done in the manner and by the person sought to be coerced. It must not only be in the power of such person, but it must be his duty to perform the act sought to be done," and cases cited.

In *Glasscock* v. *Commissioner of General Land Office,* 3 Tex., 51, 53, it is said: "It is an undoubted principle of law, that this writ will not issue against a public officer, unless to compel the performance of an act clearly defined and enjoined by the

law; and which is, therefore, ministerial in its nature, and neither involves any discretion, nor leaves any alternative." And see *Bracken* v. *Wells*, Ibid. 88; *Cullem, Adm'x* v. *Latimer*, 4 Tex. 329, 331.

In speaking of the writ of *mandamus* in *Arberry* v. *Beavers*, 6 Tex. 457, 473, the court said: "This is an extraordinary remedy, to be resorted to only when the party has no other adequate means of redress, afforded him. , And, to entitle a party to this remedy, he must show a clear legal right in himself, and a corresponding obligation on the part of the officer; for if the right, or the obligation be doubtful, the court will not interfere by this process."

In *Durrett* v. *Crosby*, 28 Tex. 687, 694, it is said by Moore, C. J.: "There is no principle more firmly settled on reason and authority than that a *mandamus* will not issue to compel a public officer to perform an act unless it be clearly enjoined and defined by law, and therefore ministerial in its character, and involves neither the exercise of discretion nor leaves any alternative."

In *Draper* v. *Noteware*, 7 Cal. 276, the following state of facts appeared: "This was a petition for a peremptory *mandamus*, on the part of the relator, Draper, then one of the supervisors of El Dorado County, against Noteware, then the auditor of said county. The complaint was that the relator, being the holder of certain claims against the county of El Dorado, which had been audited and allowed by the board of supervisors, and presented in such form to the said auditor, whose duty it was, resulting from his official station, to draw his warrant in favor of relator, on the county treasurer, for the amount of said audited accounts, and had refused to issue his warrant upon the county treasurer therefor. The answer of the auditor set up, that the law did not enjoin upon him the duty of issuing warrants upon the audited accounts of the supervisors, and denied that the petitioner was entitled to any relief, for the reason that his account was illegal, and should not have been allowed by the supervisors, etc." The court held (p. 278)—"The writ of *mandamus* can only be issued to some inferior court, board, or

officer, to compel the performance of an act or duty clearly enjoined by law, and this must be in a case where the party has no other plain, speedy, and adequate remedy. It never lies to control the discretion of an officer, or to direct in what manner he shall act, but simply commands the performance of a duty. It becomes necessary, therefore, to inquire whether it is the duty of the county auditor to draw his warrants on the treasurer for the amount of claims which have been audited, or ordered paid, by the board of supervisors. To determine this, it will be necessary to go back to the first statutes which were passed on this subject," and later stated the law then in force: "This act was afterwards repealed by the law concerning county recorders, passed March 26th, 1851, the thirtieth section of which is as follows: 'All accounts, debts, and demands, justly chargeable against any county, and which are not directed by law to be settled and allowed by some other person or tribunal, shall be examined and settled by the auditor of such county; and for all such just demands against such county, the amount of which is fixed by law, the county auditor shall issue orders on the treasurer of such county, payable to the several persons entitled thereto.'

"It will be observed at once, that there is an important difference between the two sections quoted. The words, 'settled by any other person or tribunal authorized so to do,' are omitted in the latter act, thus limiting the power of the auditor to draw his warrants to cases where the claim is audited by himself. This is undoubtedly a *casus omissus* in the law, which subsequent legislatures have overlooked, supposing, doubtless, that the law required this duty to be performed by the auditor.

"We have carefully examined all the subsequent statutes, and do not find that any provision is made for the auditor's drawing his warrants on the treasurer where the account has been allowed by the supervisors. This is a defect in the law that should be amended by the legislature, and which we would not be warranted in supplying on the pretext of public convenience.

" Judgment reversed."

In *Crandall* v. *Amador County*, 20 Cal. 72, 74, Field, C. J., said: "But laying this action of the court aside, and treating the subsequent steps taken by the plaintiff as independent proceedings to enforce the claim against the county, *mandamus* was not the appropriate remedy. The statute had provided a plain, speedy and adequate remedy in the ordinary course of law, where a demand preferred against a county has been disallowed by the board of supervisors. It has authorized in such cases the party aggrieved to sue the county, and such should have been the plaintiff's course. (Laws of 1854, chap. 41; and of 1855, chap. 47, § 24.) ' The invariable test," says Mr. Justice Harris, of the Supreme Court of New York, ' by which the right of a party applying for a *mandamus* is determined, is to inquire first whether he has a clear legal right; and if he has, then secondly, whether there is any adequate remedy to which he can resort to enforce his right. If there is, he cannot have a *mandamus*. The writ only belongs to such as have legal rights to enforce, and find themselves without an appropriate legal remedy. To prevent a failure of justice, and only for this, the court will avail itself of this extraordinary power.' (*The People* v. *Thompson*, 25 Barb. 73.) "

In *State* v. *Appleby*, 25 So. Car. 100, 102, the court said: "Mandamus is a high prerogative writ—the highest known to the law—and according to all the authorities, only issues when there is a specific legal right or a positive duty to be performed, and when there is no other appropriate remedy. When the legal right is doubtful or the performance of the duty rests in discretion or there is other adequate remedy, the writ of mandamus cannot rightfully issue."

In *State* v. *Burnside*, 33 So. Car. 278—"It is well settled that the ' writ of mandamus only issues when there is a specific legal right, or when there is a positive duty to be performed, which can be performed, and when there is no other specific remedy; when the legal right is doubtful, or where the performance of the duty rests in discretion, or where there is other adequate remedy, the writ of mandamus cannot rightfully issue.' See *Ex parte Mackey*, 15 S. C. 322, affirming *State* v. *Appleby, supra*."

In *People* v. *Supervisors of Chenango Co.*, 11 N. Y. 563, 573-4, it was held: "The general rule has been held to be, that a party could not have a remedy by mandamus, when he had a legal remedy by action," and cases cited. "It has been said that 'this is not universally true in relation to corporations and ministerial officers;' (*McCullough* v. *The Mayor of Brooklyn*, 23 Wend. 458); and in that case, where it appeared the common council had neglected its duty in omitting to issue a warrant to collect a tax, Bronson, J., said, that an action on the case would *perhaps* lie in favor of the plaintiff, who would be entitled to the money when collected, but that a mandamus would be a more appropriate remedy.

"The remark that corporations and ministerial officers were excepted from the general rule, was repeated in 2 Barb. 399, upon the authority last cited, and a case in 10 Wend. 393, which seems to warrant no such conclusion. On the contrary, Nelson, J., in that case says, ' The proposition is, I believe, universally true, that the writ of mandamus will not lie, in any case, where another legal remedy exists, and it is used only to prevent a failure of justice.' If such an exception exists, it can extend, I think, no further than was expressly recognized in *McCullough* v. *The Mayor of Brooklyn*, viz.: If there be a refusal of perform a duty expressly devolved on the corporation, though an action on the case would perhaps lie, a mandamus may be awarded; and that is hardly more than saying, 'If the remedy by action be doubtful a mandamus will lie.' "

In *King William Justices* v. *Munday*, 2 Leigh, 165, 170, the Court of Appeals of Virginia determined: "The law being thus settled, we are only to inquire whether the petitioner for this *mandamus*, had a specific legal remedy? And this is answered by the passage cited from the 9th section of the statute, 2 Rev. Code, ch. 236, ' and all such contracts made by county courts, or others appointed by them, shall be available and binding upon the justices and their successors, so as to entitle the undertaker to his stipulated reward in the county levy, or to a recovery thereof with costs, *by action of debt* against the justices refusing to levy the same.'

"The other judges concurred, and the judgment was reversed, and the *mandamus* dismissed."

In *Bresler* v. *Butler*, 60 Mich. 40, 42–3, it is said by Campbell, C. J.: "No *mandamus* can issue to a state officer to compel him to perform any but some unquestionable and legally defined duty. But where a party has a right under statute to have the state treasurer pay him some definite amount, a mandamus may lie to require it. But where the liability of the state is not recognized by the State, no suit will lie to determine it and what cannot be done against the State directly cannot be done under color of suing a state officer; *Michigan State Bank* v. *Hastings*, 1 Doug. 225; *Michigan State Bank* v. *Hammond*, *Id.* 527; *Ambler* v. *Auditor General*, 38 Mich. 746; *People ex rel. Chas. N. Ayres* v. *State Auditors*, 42 Mich. 422. If such a claim as is now set up is not a definite and direct obligation which the State has not only assumed but authorized some one to pay, no judicial interference by mandamus or otherwise would be lawful."

In *Com.* v. *Rosseter et als.*, 2 Binn. 360, 362, it is said by Yeates, J., speaking for the Supreme Court of Pennsylvania: "To found an application for a *mandamus*, the established rule of law is, that there ought in all cases to be a specific legal right, as well as the want of a specific legal remedy. 8 East. 219. The courts of justice uniformly refuse such applications, where the party has another complete remedy. 1 Ld. Ray. 38; 3 Burr. 1615; Cowp. 378; Doug. 508 (526) unless, as it is said in some cases, the remedy be extremely tedious, 2 Stra. 1082; 2 Burr. 1045. It is evident that it would be highly inconvenient to try civil rights in this mode of procedure, when the party may institute a suit in the ordinary legal course, and if injured obtain a complete satisfaction measured out to him by a jury, equivalent to a specific relief."

In *Wolff* v. *Supervisors of Sheboygan County*, 29 Wis. 79, 83, the court held: "So that we think the county board was manifestly wrong in refusing to allow the relator's account for moneys refunded by him on the tax certificates mentioned in the relation. But, while this is so, we do not see how a *man-*

*damus* can be granted to compel the board to audit and allow this account without a violation of well settled principles of law; for we suppose the doctrine to be elementary that a. *mandamus* will not be granted where the party has a clear, specific remedy by an action. This principle has been so frequently recognized and acted upon by this court that the citation of decisions in its support is deemed unnecessary. It is only in cases where there is a specific legal right to be enforced, or where there is a positive duty to be performed, and when there is no other adequate legal remedy, that the writ of *mandamus issues.*"

In *Mansfield* v. *Fuller et al.*, 50 Mo. 338, 339, 340, it is said: " We need only consider the right of the plaintiffs to resort to this remedy. *Mandamus* is one of those extraordinary writs that will issue only when the applicant has no other specific remedy. (*State* v. *Howard County Court*, 39 Mo. 375; Moses on Mand. 14.) It is never resorted to to enforce the payment of a debt when it can be collected by suit, unless the tribunal having jurisdiction refuses to act, in which case the order will be not to render a specific judgment, but to proceed with the cause. . . . I have not examined the reports of all the States to see what is the general holding in relation to municipal bonds issued as above, nor does it matter so far as the present case is concerned. All agree to the general principle that if the creditor has another adequate and specific remedy, the writ of mandamus will be denied, although they may and do differ as to whether an ordinary suit in a particular case is such remedy. It is not pretended that a private citizen holding an ordinary claim against a city or county can have it adjudicated under a writ of *mandamus.* It must be first reduced to judgment, and if then the proper authority refuses to provide for its payment the creditor may ask for mandatory process."

In *Townes* v. *Nichols*, 73 Me. 515, 517, it is said by Peters, J.: "All the authorities declare that the remedy by mandamus cannot be resorted to in a case like this, unless the legal right of the petitioner to the possession of the thing sought for is clear and unquestionable. If there be doubt as to what his

legal right may be, involving the necessity of litigation to settle it, mandamus must be withheld. Mandamus is the right arm of the law. Its principal office is, not to inquire and investigate, but to command and execute. It is not designed to assume a part in ordinary law-suits or equitable proceedings. It is properly called into requisition in cases where the law has been settled, or in cases where questions of law or equity cannot properly and reasonably arise. Its very nature implies that the law, although plain and clear, fails to be enforced and needs its assistance."

In *Chisholm* v. *McGehee*, 41 Ala. 192, pp. 195–198, the court held: Bryd, J. "The rule seems to be firmly established, that where a party applying for a writ of *mandamus* has another legal and specific remedy, the court will not grant the writ. It is a high prerogative writ, and never to be resorted to, except where otherwise justice would be obstructed. . . .

"The true rule on this question may be thus expressed: This court will not require any officer to do an act, which is not specifically and especially authorized by law, at the instance of another, in a proceeding by writ of *mandamus;* and that the comptroller is not authorized to issue a warrant on the treasurer, unless so required by law to do. It results that the judgment of the circuit court must be reversed, and the proceedings in that court be dismissed, at the costs of the appellee. Let a judgment be entered accordingly."

In *Ex parte Rowland*, 104 U. S. 604, pp. 612, 617, the law was thus declared by Chief Justice Waite: "It is also settled that more cannot be required of a public officer by *mandamus* than the law has made it his duty to do. The object of the writ is to enforce the performance of an existing duty, not to create a new one. . . . The general principle which governs proceedings by mandamus is, that whatever can be done without the employment of that extraordinary remedy, may not be done with it. It only lies when there is practically no other remedy."

In *Screwmen's Benevolent Association* v. *Benson*, 76 Texas, 552, 555, it is said: "But the writ of mandamus is a remedy of

the last resort. It is universally held that if a party has an adequate common law or statutory remedy he can not resort to this writ, and the rule has been repeatedly announced in this court," citing cases.

In *Winters & Cross* v. *Heirs of Burford*, 46 Tenn. 328, 330, the court held: "That the writ of mandamus is an appropriate remedy in cases of this description, where the facts entitle the party to the relief, is not controverted. It is a general rule, that, whenever a statute gives power to, or imposes an obligation on, a particular person, to do some particular act or duty, and provides no specific remedy on non-performance, a mandamus will be granted: Tapping on Mandamus, 80 (30).

"But the prosecutor must be clothed with a clear, legal and equitable right to something which is properly the subject of the writ, and there must be no other specific legal remedy to enforce it: Tapping, 3, 4, 9, and 28."

In *State* v. *Engelmann*, 86 Mo. 551, 561, it is said: "Mandamus is not the proper remedy in this case. It is among the fundamentals of the law relating to the issuance of such a writ, that it will not be awarded but as an extraordinary remedy, only issuing when the law, in the ordinary methods of its procedure, is powerless to grant relief. It results from this principle that relief will not be granted an aggrieved party in this unusual way, where he may attain the same result by invoking another adequate legal remedy. In all such cases the courts uniformly refuse to exercise their extraordinary jurisdiction in behalf of a party who, in such a situation, seeks it."

In *State ex rel Patterson* v. *Marshall*, 82 Mo. 484, 488, the court held: "Mandamus is one of those extraordinary writs that can be resorted to only when there exists no other specific remedy. *State ex rel. Bohannon* v. *Howard County Court*. It is never resorted to to enforce the payment of a debt, when it can be collected by suit, unless the tribunal having jurisdiction refuses to act; in which case the order would be, not to render a specific judgment, but to proceed with the cause," citing cases. And see *State* v. *Cape Girardeau County Court*, 109 Mo. 248, 252.

In *Marsh* v. *Town of Little Valley*, 64 N. Y. 112, the plaintiff sued on certain overdue bonds of the town and it was held by the court of appeals as follows (p. 116): "As the plaintiff' had a clear legal remedy by action against the town, and the liability of the debt was beyond any question, a mandamus would not lie," and see cases cited.

In *Overseers of Porter Township* v. *Overseers of Jersey Shore,*. 82 Pa. St. 275, 279, it was said by Agnew, C. J.: "It remains. to inquire into the appropriateness of the remedy by mandamus.. The law as to the exercise of the power to issue the writ is pretty well settled.   There must be a *specific legal* right and the· want of a *specific legal remedy.*   When the legal remedy has. not been ascertained or a remedy exists sufficient to enforce the· right claimed, the writ of mandamus will not be granted.   It is a high prerogative writ, to be used rather as a last resort than a common mode of redress.   Hence, the court granting it will' be careful to examine the circumstances and will exercise a, sound discretion in doing so."

In *Page* v. *Clopton*, 30 Gratt, 415, 417, the court observes; "The office of the writ of *mandamus* is to compel corporations, inferior courts and officers to perform some particular duty incumbent upon them, and which is imperative in its nature, and to the performance of which the relator has a clear legal' right, without any other adequate specific legal remedy, to· enforce it; and even though he may have another specific legal remedy if such remedy be obsolete or inoperative, the *mandamus*· will be granted," citing cases.   "The remedy is extraordinary and if the right is doubtful, or the duty discretionary, or there· be any other adequate specific legal remedy in use, this writ, will not be allowed."

In *International Contracting Co.* v. *Lamont*, 155 U. S. 303,. 308, the law was thus declared by Mr. Justice White: "The duty to be enforced by mandamus must not only be merely ministerial, but it must be a duty which exists at the time when the application for the mandamus is made.   Thus in the case of *Ex parte Rowland*, 104 U. S. 604, 612, this court, speaking· through Mr. Justice Waite, said: 'It is settled that more·

cannot be required of a public officer by mandamus than the law has made it his duty to do. The object of the writ is to enforce the performance of an existing duty, not to create a new one.'

"Moreover, the obligation must be both peremptory, and plainly defined. The law must not only authorize the act, *Commonwealth* v. *Boutwell*, 13 Wall. 526, but it must *require* the act to be done. 'A mandamus will not lie against the secretary of the treasury unless the laws require him to do what he is asked in the petition to be made to do,' *Reeside* v. *Walker*, 11 How. 272; see also *Secretary* v. *McGarrahan*, 9 Wall 298; and the duty must be 'clear and indisputable.' *Knox County Commissioners* v. *Aspinwall*, 24 How. 376."

The reason for the rule above set forth in these numerous citations from decisions in other jurisdictions concerning the writ of *mandamus* is thus set forth by the Supreme Court of the United States, speaking by Chief Justice Taney, in *Kendall* v. *Stokes et al.*, 3 How. 100: "The remedy in that form, originally, was not regarded as an action by the party, but as a prerogative writ commanding the execution of an act, where otherwise justice would be obstructed; and issuing only in cases relating to the public and the government; and it was never issued when the party had any other remedy. It is now regarded as an action by the party on whose relation it is granted, but subject still to this restriction, that it cannot be granted to a party where the law affords him any other adequate means of redress. Whenever, therefore, a mandamus is applied for, it is upon the ground that he cannot obtain redress in any other form of proceeding."

The rule thus announced is supported by the textwriters and decisions in England. In Tapping on Mandamus, *p. 18, it is said: "The writ of mandamus is not a writ grantable of right, but by prerogative, and, amongst other things, it is (as before stated) the absence or want of a specific legal remedy, which gives the court jurisdiction to dispense it. It is not granted to give an easier or more expeditious remedy; but only where there is no other remedy, being both legal and spe-

·cific; and so long and uniformly has the court adhered to this
·doctrine, and refused to grant, or, if granted quashed, the writ,
in cases where there is a specific legal remedy, either at common
law or by act of Parliament, that it has become a principle of
the law of this subject."

When, by competent authority, it shall have been made the
·duty of town councils to allow claims against towns for the
payment of which funds have been duly and specifically appro-
priated by the taxpaying electors, and when it shall have been
made the duty of town treasurers to pay the claims so allowed,
when, too, no other plain and adequate remedy shall have been
provided for the failure so to do, or when specific provision
shall have been made requiring the performance of such duty
by means of the extraordinary and prerogative writ of *man-*
*damus*, then a petitioner may institute and maintain a proceed-
ing similar to the case at bar. But in the absence of such
authority it is not the province of the judiciary by resort to a
forced construction requiring the piling of one implication upon
another, and contrary to fact, to grant the relief here sought.
I can not assent to thus substituting a *mandamus* for a sum-
mons. Nor is there any peculiar right in this respect possessed
by a creditor of a town, or any peculiar sanctity attaching to a
debt due from a town. Indeed, if this be held to be a proper
·case for *mandamus*, every claimant similarly situated has a like
right; and that remedy which all the authorities agree is extra-
·ordinary becomes the ordinary remedy, to the practical ex-
clusion of the statutory remedy by suit. In *Com. ex rel Walton*
v. *Lyndall*, 2 Brewster, 425, 436, it is well said in the dissenting
opinion of Brewster, J.: "Claims against a city are not·the
·especial favorites of the law. The holders of city warrants
have not been provided by statute with any process for the
collection of their demands which has been denied to creditors
of private corporations or of individuals. The law is no re-
specter of persons, and if we extend the remedy of mandamus
to the collection of this debt, we must, to be consistent with
ourselves, compel every debtor, who admits the demand or who
presents an unsatisfactory defence, to sign an order upon his

banker for the payment of the claim. When an argument carried but a few steps upon its journey leads us to results so illogical, we may surely condemn it as a fallacy."

In my opinion, the law as it stands clearly remits the petitioner to its plain and adequate remedy at law by the specific provision of the statute—covering the exact case here presented, and its petition for a writ of *mandamus* accordingly must be denied and dismissed.

I am authorized to state that Dubois, C. J., concurs in this dissent.

*C. M. Van Slyck, Frederick A. Jones,* for petitioner.
*Harry C. Curtis, P. Henry Quinn,* for respondent.